## PARSONS *v.* MARYE and others.[1]

*(Circuit Court, E. D. Virginia. February 11, 1885.)*

1. **FEDERAL JURISDICTION — SUITS AGAINST STATE OFFICERS — MANDATORY INJUNCTIONS.**

   Although a state, without its consent, cannot be sued as an individual, yet where a plain official duty, requiring no exercise of discretion, is to be performed by a state officer, and the performance is refused, any person who will sustain a personal injury by such refusal may have a *mandamus* to compel performance; or, where *mandamus* is not available, may have a mandatory injunction for that purpose; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it.

2. **SAME.** — A federal court has jurisdiction over a state officer, in questions arising under the constitution, laws, etc., of the United States, where the law has imposed upon him a well-defined duty in regard to a specific matter not affecting the general powers or functions of government, but in the performance of which one or more individuals have a distinct interest, capable of enforcement by judicial process; and when it shall be necessary to enforce the rights of the individual, a court of chancery may, by a mandatory decree, or by injunction, compel the performance of the appropriate duty, or enjoin the officer from doing what is inconsistent with that duty and with the plaintiff's rights in the premises.

3. **SAME — VIRGINIA COUPONS — CASE AT BAR.** — A non-resident holder of Virginia coupon bonds makes arrangements with sundry tax-payers to purchase and use in payment of license taxes due the state the coupons cut by him from his bonds, by which arrangement he would receive payment in large part for his coupons; the tax-collecting officers, as required by state laws, have in various ways published that coupons would not be received in payment of such taxes; the state law allowing tax-payer to sue for purpose of verifying coupons had been repealed as to license taxes, and the writ of *mandamus* had been taken away from tax-payer in all coupon cases. The bondholder brought his bill in equity in the United States circuit court against the state auditor and the collecting officers of Richmond city to enjoin them from refusing to receive his coupons, and to have a specific performance of the state's contract to receive them, as evidenced on their face; the genuineness of the coupons was not denied in the answer, nor put in issue. *Held:* (1) The court has jurisdiction of the case and the parties, and may grant the relief prayed for. (2) A court of equity has power to award mandatory injunctions as part of its general jurisdiction. (3) A tender of the coupons was not necessary to entitle the complainant to bring his bill, the state having in numerous ways published that they would not be received. (4) Section 114 of the Virginia assessment act of March 15, 1884, by repealing section 3 of the act of January 14, 1882, took away the right to verify coupons when offered in payment of license taxes, which had been pronounced an adequate remedy in *Antoni v. Greenhow*, 7 Va. Law J. 218; S. C. 2 Sup. Ct. Rep. 91, and left the tax-payer without power to use coupons in paying license taxes, and without remedy against the state. (5) The genuineness of the coupons not being put in issue. must be taken as admitted by the defendant. (6) In making the contract of the tax-receivable coupon, the state virtually waived the benefit of plenary proceedings in suits against her officers to enforce it, in cases wherein the genuineness of the coupons is not put in issue; and it would seem that the state, in agreeing to receive the coupons, has waived the right to a plenary defense in all suits for specific performance of the contract in which she does not deny the genuineness of the coupon.

Motion for a Preliminary Injunction.

*R. L. Maury* and *D. H. Chamberlayne,* for complainant.

*The Attorney General,* for defendants.

[1] From the Virginia Law Journal.

HUGHES, J. This bill is brought by Edward Parsons, a resident of New York, and a holder of the bonds of Virginia issued under the funding act of March 30, 1871. The defendants are Morton Marye, auditor of Virginia; Samuel C. Greenhow, treasurer; and R. B. Munford, revenue commissioner of Virginia in Richmond.

The bill sets out the history and provisions of the funding act of 1871, reciting that the bonds it authorized were issued, with coupons attached, receivable at and after maturity for all taxes, demands, and dues to the state, and that this receivability of the coupons for taxes constituted the chief value of the bonds. It alleges that a large number of creditors were induced to surrender their old bonds on the faith of the new, because of this receivability of the coupons in taxes, and that thereby a contract was made between the state and the holders of the new bonds; that the latter should have the right not only to tender the coupons directly in payment of taxes, but should also have the right to transfer them to any tax-payer of the state, with their quality of receivability for taxes annexed. The complainant sets forth that he is the owner of $4,986 of said coupons past due and unpaid, cut by himself from genuine bonds issued under the funding act of 1871, and that they are genuine and receivable for taxes by their express tenor. He alleges that other coupons cut by himself from the same bonds have been pronounced genuine by a jury in the mode prescribed by the laws of Virginia, and have also been ascertained to be genuine by this court. He insists, therefore, that the coupons now in question are by every test genuine, valid, and legal, and entitled to be received, according to their tenor, in payment of all taxes due the state. These averments imply that this complainant has held as an investment of his own, for a series of years, the bonds from which the coupons in question were cut; that they have not been bought in market in speculation; and that he is now seeking to render these securities available by transferring them to tax-payers, to be used in payment of their dues to the state of Virginia. He alleges that this right to transfer them would make them worth to him 95 cents on the dollar.

The complainant alleges that Virginia has for a long time refused, and still refuses, to pay the coupons in money; and that she has, moreover, enacted certain laws intended to destroy their receivability in payment of dues to herself, to his own great damage and injury, and in violation of her contract with him in that respect. He particularly complains that the state has passed an act forbidding the receipt of his coupons for license taxes, and providing that the auditor and commissioners of revenue shall not grant licenses until the applicant exhibits evidence that he has deposited the amount of the license taxes in gold, silver, and treasury and national bank-notes; and he avers that he has the right to have his coupons received in payment of license taxes whenever they may be tendered by any person owing such taxes; and claims the right to such process as may

be necessary to require the officers charged with such duties to receive his coupons in payment of license taxes, and thereupon to issue licenses precisely as if payment had been made in money itself. He sets forth that, relying upon his right to transfer his coupons to those who are tax-payers of the state, he has made arrangements with sundry tax-payers to use the coupons in question in payment of their taxes and license taxes now due, and that by such arrangement he would receive payment in large part for his coupons; but that the tax collectors of the state refuse and the defendants refuse to accept the said coupons according to the terms of the contract. He files with his bill a list of the coupons, amounting to $4,986, upon which it is founded, which identifies them by their numbers, letters, and dates. He prays for an injunction against the defendants to restrain them from refusing to receive the particular coupons thus identified. He also prays for a specific performance on defendants' part of the state's contract with himself, evidenced by these particular coupons, and for general relief.

The defendants file an answer, among other things setting up the acts of the general assembly of Virginia, which require coupons to be verified by a jury, and denying that these particular coupons have ever been so verified. The answer does not deny that the coupons are genuine, and does not comply in that respect with the statute law of Virginia, page 1094 of the Code of 1873, *c.* 167, § 39, which puts the burden of affirming the spuriousness of a signature on the defendant. Defendants also demur to the bill for multifariousness, and on other grounds, which are proper to be considered at the final hearing of this cause. Defendants also plead in abatement to the jurisdiction of the court. Upon the complainant's bill, duly verified, this court, on the second February instant, granted a temporary restraining order in substantial accordance with its prayers, and set down for hearing on the tenth of February the complainant's motion for a preliminary injunction. It is upon this motion for an injunction, which shall stand until the final hearing of the cause, that we are to pass.

After so many hearings of coupon cases in this court, it is useless to go into the equities of the one at bar. The contract of the state with the holders of coupons like those under consideration cannot be denied. The genuineness of the particular coupons, $4,986 in nominal amount, as to which an injunction is asked for, is not denied, and must be assumed to be conceded. It is the misfortune of the defendants in all this class of suits that they cannot deny on oath the genuineness of the coupons sued upon; and that the court, upon all the rules of pleading, and by reason of section 39 of the 167th chapter of the Virginia Code, must take their genuineness as confessed. The supreme court of the United States declared in *Antoni* v. *Greenhow,* 7 Va. Law J. 218, S. C. 2 Sup. Ct. Rep. 91, that the legislation of Virginia relating to the verification of coupons in no manner shifts the burden of proof.

Nor is it worth while to advert to the provision of the national constitution which forbids a state from passing any laws violating or impairing the obligation of her contracts, or to show that such laws are unconstitutional, null, and void. Nor is it necessary to show particularly the unconstitutionality of legislative acts of Virginia which in their practical effect operate to destroy or *impair* the contract specifically set out in this bill. Nor need it be shown that the coupons now sued upon do evidence a contract between the state of Virginia and the complainant. That this is a valid, subsisting contract has, in reference to similar coupons, been declared by the supreme court of the United States in *Hartman* v. *Greenhow*, 102 U. S. 672, and by the supreme court of appeals of Virginia in *Antoni* v. *Wright*, 22 Grat. 833, and by both courts in other cases, which need not be cited. For the purposes of this case, all these propositions may be assumed to be finally and irrevocably settled; and I shall confine myself to questions which are in some degree peculiar to the present suit, and which may be thought open still to discussion. These are, *first*, whether the court has, as a federal court, jurisdiction of the suit itself; and, if so, *second*, whether, as a court of equity, it has jurisdiction of the remedy sought to be employed.

The first is only another form of the question whether we have jurisdiction as to the parties to the record. The complainant being a resident of New York, and the defendants residents of Virginia, we have jurisdiction as to the parties, unless the objection be valid that the parties defendant here are sued as officers of the state, and that the real defendant is the commonweath of Virginia. If so, then we have no jurisdiction; for, although Virginia in the national constitution granted the right to be sued in the federal courts in certain cases by the subjects of foreign countries or citizens of sister states, yet by the eleventh amendment she revoked that grant. The question therefore is whether suits against the officers of a state, in respect to the discharge of their public duties, are, in all cases, suits against the states themselves; and, if not in all, then in what cases. When the suit of the *Baltimore & O. R. Co.* v. *Allen*, 17 Fed. Rep. 171, S. C. 7 Va. Law J. 409, was before the judges of this court, severally, in the spring of 1883, this very question was the pivotal one on which the case turned. On application by the company to me for a preliminary injunction to restrain the revenue officers of Virginia from distraining for taxes after tender of coupons, I refused the injunction, principally on the ground that the suit was, in fact, against the commonwealth, and only in form against her officers personally. The circuit judge, (Judge Bond,) a day or two afterwards, on application to him, granted the injunction, taking the opposite view, and holding that that was not a suit against the state. Not only was this, but other important questions connected with the obligations of the state and her officers to receive tax-receivable coupons involved. An appeal was taken, and we have been continually anxious that the supreme court should

decide that case, and give us the guidance of its rulings on the questions presented in it. But it has been allowed to await its turn on the overburdened docket of that court. The appellee (the railroad company) cannot move to advance it; and although section 949 of the United States Revised Statutes, in all cases "when a state is a party, or the execution of the revenue laws of a state is enjoined or stayed," authorizes the state herself to move to advance, and the state has been all the time entitled to a speedy hearing of this and other causes on the docket of the supreme court if she but demanded it, this important case was not advanced until lately, when it, with others in which she is a party, was set down for hearing on the sixteenth of March proximo. We have postponed our own action in many coupon cases now before us, awaiting decisions in those now in the supreme court. Our policy has been to refrain from all action which, with any color of propriety, can be postponed for that purpose.

I do not, however, think that the question of jurisdiction as to parties in the case at bar is any longer undecided in the supreme court. At the last term it decided the case of *Cunningham* v. *Macon & B. R. Co.*, reported in 109 U. S. 446, S. C. 3 Sup. Ct. Rep. 292, in which it elaborately discussed the question which confronts this court in the case at bar. The supreme court said, (3 Sup. Ct. Rep. 295-300:)

"The failure of several of the states of the Union to pay the debts which they have contracted, and to discharge other obligations of a contract character, when taken in connection with the acknowledged principle that no state can be sued in the ordinary courts as a defendant except by her own consent, has led, in recent times, to numerous efforts to compel the performance of their obligations by judicial proceedings to which the state is not a party. These suits have generally been instituted in the circuit courts of the United States, or have been removed into them from the state courts. In such suits the effort has been made, while acknowledging the incapacity of those courts to assume jurisdiction of a state as a party, to proceed in such a manner against the officers or agents of the state government, or against the property of the state in their hands, that relief can be had without making the state a party.

"It may not be amiss to try to deduce some general principles sufficient to decide the case before us. It may be conceded as a point of departure unquestioned that neither a state nor the United States can be sued as defendant in any court in this country without their consent, except in limited cases, etc. This principle is conceded in all the cases, and whenever it can be clearly seen that the state is an indispensable party to enable a court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction. But in the desire to do that justice which in many cases the courts can see will be defeated by an unwarranted extension of this principle, they have in some instances gone a long way in holding the state not to be a necessary party, though some interest of hers may be more or less affected by the decision. A reference to a few cases may enlighten us in regard to that now under consideration.

"(1) It has been held in a class of cases where property of the state, or property in which the state has an interest, comes before the court and under its control, in the regular course of judicial administration, without being forcibly taken from the possession of the government, the court will proceed to discharge its duty in regard to the property. * * *

"(2) Another class of cases is where an individual is sued in tort for some act injurious to another, in regard to person or property, to which his defense is that he has acted under the orders of the government. In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. * * * To this class belongs the recent case of *U. S.* v. *Lee,* 106 U. S. 196; S. C. 1 Sup. Ct. Rep. 240 (the *Arlington Case;*) for the action of ejectment in that case is, in its essential character, an action of trespass, with the power in the court to restore the possession to the plaintiff as part of the judgment. And the defendants, Strong and Kaufman, being sued individually as trespassers, set up their authority as officers of the United States, which this court held to be unlawful, and therefore insufficient as a defense. * * *

"(3) A third class, which has given rise to more controversy, is where the law has imposed upon an officer of the government a well-defined duty in regard to a specific matter not affecting the general powers or functions of government, but in the performance of which one or more individuals have a distinct interest, capable of enforcement by judicial process. * * * In all such cases, from the nature of the remedy by *mandamus,* the duty to be performed must be merely ministerial, and must involve no element of discretion to be exercised by the officer. It has, however, been much insisted on that in this class of cases, where it shall be found necessary to enforce the rights of the individual, a court of chancery may, by a mandatory decree, or by injunction, compel the performance of the appropriate duty or enjoin the officer from doing that which is inconsistent with that duty, and with the plaintiff's rights in the premises. Perhaps the strongest assertion of this doctrine is found in the case of *Davis* v. *Gray,* 16 Wall. 203. In that case, the state of Texas having made a grant of the alternate sections of land along which a railroad should be located, and the railroad company, having surveyed the land at its own expense, and located its road through it, the commissioner of the state land-office and the governor of the state were, in violation of the rights of the company, selling and delivering patents for the sections to which the company had an undoubted vested right. The circuit court enjoined them from so doing, which was affirmed in this court. * * * It is clear that, in enjoining the governor of the state in the performance of one of his executive functions, the case goes to the verge of sound doctrine, if not beyond it; and that the principle should be extended no further. Nor was there in that case any affirmative relief granted by ordering the governor and land commissioner to perform any act towards perfecting the title of the company.

"The case of *Board of Liquidation* v. *McComb,* 92 U. S. 531, is to the same effect. The board of liquidation was charged by the statute of Louisiana with certain duties in regard to issuing new bonds of the state, in place of old ones, which might be surrendered for exchange by the holders of the latter. The amount of the new bonds was limited by a constitutional provision. McComb, the owner of some of the new bonds already issued, filed his bill to restrain the board from issuing that class of bonds in exchange for a class of indebtedness not included within the purview of the statute, on the ground that his own bonds would thereby be rendered less valuable. This court affirmed the decree of the circuit court, enjoining the board from exceeding its power in taking up by the new issue a class of state indebtedness not within the provisions of the law on the subject. In the opinion in that case the language of Mr. Justice BRADLEY tersely thus expresses the rule and its limitations: ' The objections to proceeding against state officers by *mandamus* or injunction are—*First,* that it is in effect proceeding against the state itself; and, *second,* that it interferes with the official discretion vested in the officers. It is conceded that neither of these can be done. A state,

without its consent, cannot be sued as an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter.   But it has been settled that where a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain a personal injury by such refusal may have a *mandamus* to compel performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it.'   It is believed that this is as far as this court has gone in granting relief to this class of cases.   *   *   *

"On the other hand, in the cases of *Louisiana* v. *Jumel* and *Elliott* v. *Wiltz*, 107 U. S. 711, S. C. 2 Sup. Ct. Rep. 128, very ably argued and very fully considered, the court declined to go any further.   *   *   *   The short statement of the reason for its judgment in those cases is that, as the state could not be sued or made a party to such proceeding, there was no jurisdiction in the circuit court either by *mandamus* at law, or by a decree in chancery, to take charge of the treasury of the state, and, seizing the hands of the auditor and treasurer, to make distribution of the funds found in the treasury in the manner which the court might think just.   *   *   *   We think the foregoing cases mark with reasonable precision the limit of the powers of the courts in cases affecting the rights of the state or federal governments in suits to which they are not voluntary parties.

"In actions at law of which *mandamus* is one, where an individual is sued *   *   *   in regard to a duty which he is personally bound to perform, the government does not stand behind him to defend him.   If he has the authority of law to sustain him in what he has done, like any other defendant, he must show it to the court and abide the result.   In either case the state is not bound by the judgment of the court; and generally its rights remain unaffected.   It is no answer for the defendant to say, 'I am an officer of the government and acted under its authority,' unless he shows the sufficiency of that authority.   Courts of equity proceed upon different principles in regard to parties," etc.

After this careful review of the decisions, the court said that in the case before it Georgia was an indispensable party, and that as the object of the suit was to dispossess her of a railroad, of which she had both title and actual possession, the suit was not one of which it could retain jurisdiction.

The reasoning of the supreme court in this case of *Cunningham* v. *Railroad Co.*, really *Cunningham* v. *Georgia*, (for the state herself was the railroad company,) settles in advance the case pending before it from Virginia of *Allen* v. *Baltimore & O. R. Co.*, and makes it reasonably certain that, at least on the question of jurisdiction as to parties, it will affirm the ruling of Judge Boyd and reverse my own. It settles also the case at bar; for the granting of a preliminary injunction here is by no means as extreme an exercise of jurisdictional power as there was in the *Texas Case*, where a federal court arrested the hand of a governor and land commissioner while engaged in violating a legislative contract; or as there was in the *Louisiana* and *McComb Cases*, where another federal court, in order to prevent an indirect and contingent depreciation of complainant's bonds, forbade the state's financial board from issuing bonds which they deemed, but which the court denied, that they had a right to issue; or as there

was in the *Arlington Case*, where this court, in which I now sit, gave judgment against officers of the army of the United States holding for the United States,—one of them in charge of a cemetery for Union soldiers,—ordering them off the patrimony of the Lees, and requiring possession to be given to a general of the confederacy. Compared with those cases, the one at bar, involving as it does less than $5,000 in nominal value of dishonored coupons, is not of superior importance. I think from what itself has said that there can be no reasonable doubt entertained as to what the supreme court's views are on the subject of suits against officers of states. That congress is of opinion that the revenue officers of the states may be "enjoined and stayed" in their collections, is shown by the terms of section 949 of the United States Revised Statutes, from which I have quoted. I shall, therefore, leave that branch of the subject.

The question stated, in syllabus form, is this: A public creditor who does not ask that money may be taken out of the treasury, or property out of the possession of the state, has a right under a public statute to the performance in his behalf of an act by a public officer. That officer sets up another public statute which forbids the performance of that act, but which the public creditor insists is unconstitutional, null, and void. This question is brought before a court for decision by the public creditor, who makes the officer alone a party defendant to his suit. The question is whether the officer must obey the statute which commands or the statute which forbids the act sought by the creditor. It is a question for judicial decision; and as the act sought is merely ministerial, the weight of judicial authority is that the state is not a party necessary to the suit. Such is the case at bar. By setting out on the face of the coupons a contract to receive them in discharge of taxes it would seem to have been the intention of the Virginia legislature of 1871, in the event that this contract should be impaired by subsequent legislation, to give the federal courts jurisdiction to enforce it. And by making the coupons self-collecting in taxes it would seem to have been the object of the same legislature to make the reception of the coupons for taxes a mere ministerial duty of the revenue officers of Virginia, the performance of which might be enforced by the courts in proceedings against the officers, to which the state would not be a necessary party. If the coupons evidenced simply an obligation of the state to pay money, then it would be out of the power of the courts, in proceedings against revenue officers alone, to take money out of the public treasury for the purpose of paying the coupons. This difference between a coupon calling for money and a coupon receivable in the payment of taxes affords a good illustration of the difference between a suit against a public officer, in which the state is a necessary party defendant, and a suit in which the officer only needs to be sued. The case at bar is one of the latter class.

I come now to the question whether this court, having jurisdiction

as to parties, has, as a court of equity, jurisdiction of the remedy, and may grant the injunction prayed for by the complainant. Assuming, from the condition of the pleadings, that the coupons described in the bill are genuine, and that complainant has transferred them to tax-payers with the quality of receivability guarantied, the remaining question is simply one of the jurisdiction of equity as to the remedy applied for; and let it be premised that an actual tender of the coupons described in the bill to the revenue officers of the state, and their refusal to receive them, were not necessary conditions precedent to entitle complainant to bring this bill,—it having been publicly made known by the authorities of the state, in numerous ways, that the coupons would not be received in payment of taxes according to their tenor, these public notifications made a tender useless, the law not requiring any one to do a vain thing. *Tacey* v. *Irwin*, 18 Wall. 549.

If the writ of *mandamus* is, on general principles, the proper one in this case, it must be observed that it is taken away from the complainant by the act of assembly of January 26, 1882, and by the acts of 1884 relating to licenses. *Mandamus* being a remedy at law, and the 914th section of the United States Revised Statutes having conformed the practice in the courts of the United States in common-law cases to that employed in the courts of the states in which they are respectively held, the statutes of Virginia, which take away *mandamus* in the state courts in cases where coupons are sought to be used in the payment of taxes, take it away in the courts of the United States. *Harvey* v. *Virginia*, 8 Va. Law J. 400; S. C. 20 Fed. Rep. 411. In that case I also held that the right of a tax-payer to sue for the purpose of verifying coupons offered in payment of taxes, which was given by section 3 of the act of January 14, 1882, (Coupon Killer No. 1,) was taken away as to license taxes by section 114 of the act assessing licenses and providing a mode of applying for licenses, approved March 15, 1884, which repealed that section. And therefore complainant, having no remedy at law, and being otherwise remediless, resorts to equity, and applies here for what is known in English and American jurisprudence as a *mandatory* injunction, which is the counterpart in equity of a *mandamus* at law.

Must we go into the elementary books to find warrant for such a process? Jeremy, in his Equity Jurisdiction, says: "An injunction is a writ framed *according to the circumstances of the case, commanding* an act which the court regards as essential to justice, or *restraining* an act which it considers contrary to equity and good conscience."

The mandatory injunction may be in the direct form of command, or in the direct form of prohibiting the refusal to do an act to which another has a right. It may be used against public officers. High says, in section 1308: "The preventive jurisdiction of equity extends to the acts of public officers, and will be exercised in behalf of private citizens who sustain such injury at the hands of those claiming to

act for the public as is not susceptible of reparation in the ordinary course of proceeding at law." Indeed, section 949 of the United States Revised Statutes shows that the federal courts may enjoin and stay the revenue officers of the states. Such was the express ruling of the supreme court, as already quoted, in the case of *Board of Liquidation* v. *McComb.*

It were useless to cumber this opinion with as profuse a citation of authorities as might be made in support of injunctions, mandatory in character, forbidding public officers or other defendants to refuse the performance of duties which citizens may rightfully demand at their hands. Very many authorities for such process are cited in the brief of counsel for complainant, embracing cases from the English courts, from the courts of the states of this Union, and from our federal courts, and I need not repeat the citations here. The printed brief does not contain the case of *Brooke* v. *Barton,* 6 Munf. 306, in which the Virginia court of appeals *enjoined the defendant to permit* the complainant to have the benefit of a covenant entered into by the defendant. I will add a few citations from decisions of the federal courts. In the case of *Coe* v. *Louisville & N. R. Co.* 3 FED. REP. 775, Judge BAXTER, United States circuit judge, issued an order enjoining defendant from refusing to comply with an obligation arising upon a contract. In the case of *Denver & N. O. R. Co.* v. *Atchison, T. & S. F. R. Co.* 15 FED. REP. 650, Judge HALLETT, (Circuit Judge McCRARY concurring,) after elaborate argument and an extended citation of precedents, made a decree of the same character. In the case of *Baltimore & O. R. Co.* v. *Adams Exp. Co.* 22 FED. REP. 404, a like injunction forbidding the refusal of a duty enjoined by contract was granted, Judges BOND and MORRIS sitting. These and other like orders of federal courts in other cases had been pointedly sanctioned by what the supreme court had said in the case of *Board of Liquidation* v. *McComb.*

In the light of all the authorities on the subject, we do not think there is any doubt of the power of a court of equity, as a part of its general jurisdiction, to grant injunctions mandatory in character.

The real objection to the remedy in the present suit, though not made in the defense nor argued at bar, as we should have desired, is that in this case the preliminary injunction is equivalent to a final decree, and that the defendants are therefore deprived of the benefit of plenary proceedings, which, in general, is a matter of right. But this results from the character and subject of the contract, the benefit of which is sought by this suit. In making the contract of the tax-receivable coupon, the state virtually waived the benefit of plenary proceedings in suits against her officers to enforce it in cases wherein the genuineness of the coupons is not put in issue. This contract would be worthless to the tax-payer, if he could not use the coupon at the time the tax was due; and if the right to use it is denied him just when the collector applies for the tax under the laws of the

state, its value for that purpose is destroyed, or, by the use of it being postponed, is seriously impaired. In agreeing that it shall be so used, it seems to us that the state has waived her right to a plenary defense in all suits for a specific performance of the contract in which she does not deny the genuineness of the coupon. I repeat that we should have liked to hear argument on the subject. It was, in point of fact, the real question in the case. In the absence of argument, we thought that the objection under consideration did not hold good in this suit.

The decree now entered will apply of course only to the coupons which are the subject of this bill, $4,986 in nominal amount. I believe that Judge Bond has given a restraining order in the similar suit of George Parsons. The aggregate amount of coupons involved in both is less than $10,000 in nominal value, and these two suits do not, therefore, embody in themselves amounts of any grave importance. But we are well aware of the sweeping importance to the state of the principle on which the case at bar proceeds, and earnestly desire that the question shall be carried to the supreme court, to be dealt with there. We have no right to suppose that the complainant here made the amount on which he brought his suit less than $5,000 by design. *Non constat* but that these coupons are all that he owned. But we are not disposed to encourage suits brought on amounts just within $5,000, working as they do a practical fraud upon the right of defendants to the judgment of the appellate court, and shall be averse to granting injunctions in future cases having that effect until a suit involving more than $5,000 shall have been brought.

Injunction awarded.

Bond, J., concurs.

See note to *Baltimore & O. R. Co.* v. *Allen,* 17 Fed. Rep. 188.—[Ed.