(158 App. Div. 638.)

WARNER–QUINLAN ASPHALT CO. v. CARLISLE, State Highway Com'r.

(Supreme Court, Appellate Division, Third Department. November 12, 1913.)

1. INJUNCTION (§ 24*)—ISSUANCE—GROUND.
    Where the work on public highways cannot be done for a long time, a motion to enjoin the letting of such work will not be denied, on the ground that it would work a public inconvenience.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 23; Dec. Dig. § 24.*]

2. CONSTITUTIONAL LAW (§ 277*)—DUE PROCESS OF LAW—PROPERTY.
    One of the property rights of a citizen, which cannot be taken without due process of law, is a free right to market his property.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 762, 766, 949; Dec. Dig. § 277.*]

3. STATES (§ 168½*)—SUIT AGAINST STATE OFFICER—RIGHT TO MAINTAIN.
    While a taxpayer's action lies only against municipalities, and not a state, yet a taxpayer, who manufactures asphalt paving material, may maintain an action against the highway commissioner to enjoin him from letting contracts for the repair of highways which specify a particular kind of asphalt, of which one concern has a monopoly, in violation of Laws 1913, c. 80, § 14, providing that no patented material shall be speci-fied, unless there be a reasonable opportunity for competition, thus pre-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cluding plaintiff from selling his own product, for that works a special injury to plaintiff, and may deprive him of his property without due process of law.

[Ed. Note.—For other cases, see States, Dec. Dig. § 168½.*]

Appeal from Special Term, Albany County.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Henry A. Rubino, of New York City, for appellant.

Thomas Carmody, Atty. Gen., and James A. Parsons, Deputy Atty. Gen., for respondent.

SMITH, P. J. This action is brought to enjoin the letting of a certain contract for highway repair on the ground that the proposals for bids contained specifications which were in violation of section 14 of chapter 80 of the Laws of 1913, adding section 25 to the Highway Law. That paragraph reads as follows:

"Patented Material or Articles. In the construction, maintenance or repair of state or county highways no patented material or article or any other material or article shall be specified, contracted for or purchased, except under such circumstances that there can be fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the commissioner of highways."

[1] The contention of the plaintiff is that in the specifications for the contract which is sought to be enjoined was included the description of an asphaltum which precluded any opportunity for competition and was procurable only from the Barber Asphalt Company, a subsidiary of the General Asphalt Company. The plaintiff is the producer of a liquid asphalt, which from the papers would appear to answer all the tests prescribed in the specifications, except that the specifications call for a solid asphalt, which is produced only by the single company, the General Asphalt Company, and its subsidiaries. From the affidavits it would appear that this solid asphalt is nothing else than the liquid asphalt which has been many years exposed, so that many of the oils have been evaporated therefrom, and which requires the addition of further oils in order to be brought back into a state in which it can be used for the purposes of a highway, while the liquid asphalt, not having been exposed, has retained within itself these oils, which make it adaptable for the purposes of a highway without such treatment. These facts seem to be supported by the moving papers and were not questioned by the Special Term. The denial of the injunction was put upon two grounds: First, that a public work should not be interfered with; secondly, that the plaintiff had not sufficient interest to authorize an action upon his part for an injunction. The first ground, as thus stated, would seem to be obviated by the advance of the season, so that the roads cannot in any event be repaired for

many months. The sole question, then, for our determination, is whether the plaintiff has a sufficient special interest to authorize an action upon its part enjoining the highway commissioner from letting these contracts.

[2, 3] Whatever may have been the theory upon which this action was originally started, it is now admitted by the plaintiff's counsel that it cannot be maintained purely as a taxpayers' action; that a taxpayers' action lies only as against municipalities, and does not lie against the state. That the people of the state, through the Attorney General, could bring the action, if in the making of these specifications any law were violated, would seem to be undoubted. It is claimed, however, that this right of action rests also with the plaintiff, because of the threatened injury to his individual rights. The plaintiff admits that it would be lawful for the defendant to place in these specifications any test as to quality or durability, but denies the right to add any other qualification, which does not go either to quality or durability, which would preclude its right or the right of any contractor to bid therefor upon the basis of the use of the plaintiff's product. In Long v. Johnson, 70 Misc. Rep. 308, 127 N. Y. Supp. 756, it is stated that an officer of the state cannot be enjoined at the suit of an individual taxpayer, "who has no special rights or grievances aside from the great mass of taxpayers." In Roosevelt v. Draper, 23 N. Y. 323, such an action on behalf of an individual is restricted to one who had "some individual interest, distinct from that which belongs to every inhabitant of the town or county," and it was held that the owning of taxable property was not a sufficient interest to authorize an individual action. In Molloy v. City of New Rochelle, 198 N. Y. 402, 92 N. E. 94, 30 L. R. A. (N. S.) 126, a taxpayer was allowed to bring an action to prevent an official illegal act. It was there held that a taxpayer otherwise qualified to maintain such an action is not otherwise disqualified "because specially and peculiarly interested in the event." In that case the only interest to which reference was made was the interest of a contractor whose bid for city work was wrongfully excluded. We are cited to no cases, and have been able to find none, where the precise question has arisen whether the owner of a product which is wrongfully excluded from competition in a public contract has such a special interest as would authorize it to bring an action restraining the illegal letting of the contract. Under our system for the building of state highways the use of asphaltum will probably be very great, and in the contracts sought to be enjoined is not inconsiderable. If, as is contended, the plaintiff has a product which can meet every test of quality and durability in the asphaltum called for in the specifications, and is wrongfully precluded from furnishing such asphalt by the failure of the defendant to observe the law in making the specifications so as to insure competition, it would seem that the plaintiff had a very vital interest to protect in demanding that the defendant observe the requirements of the statute in making his specifications. A material part of his market has been taken from him. In all the authorities which define what property may not be taken from a citizen without due process of law, the free right to market his property is recognized

as one of the rights protected by the Constitution.  In People v. Hawkins, 157 N. Y. page 7, 51 N. E. 258, 42 L. R. A. 490, 68 Am. St. Rep. 736, Judge O'Brien, in writing for the Court of Appeals, says:

"The citizen cannot be deprived of his property without due process of law. The principle embodied in this constitutional guaranty is not limited to the physical taking of property.  Any law which annihilates its value, restricts its use, or takes away any of its essential attributes, comes within the purview of this limitation upon legislative power.  The validity of all such laws is to be tested by the purpose of their enactment and the practical effect and operation that they may have upon property.  A law which interferes with property by depriving the owner of the profitable and free use of it, or hampers him in the application of it for the purposes of trade or commerce, or imposes conditions upon the right to hold or sell it, may seriously impair its value, against which the Constitution is a protection."

The prevailing rule in other states would seem to authorize this action as an action in behalf of the taxpayer only.  See 4 Dillon, Municipal Corporations (Last Ed.) §§ 1579, 1588.  While the rule is otherwise held in this state, it would seem that any right sufficiently tangible to be within constitutional protection should be sufficiently tangible to give a standing to a party to enjoin an illegal infringement of this right.  It is not simply a question of a prohibition to become a bidder upon this work.  The quotation by the learned justice at Special Term in his opinion from the case of People v. State Board, 42 Mich. 428, 4 N. W. 274, was pure dictum in that case, and I doubt its soundness. In the case at bar, however, this goes beyond the mere right to bid. It restricts what would otherwise be an open market for the plaintiff's property, and this in violation of the requirement of our statute.  Such an interest may be a slight one, or it may be a vital one to this plaintiff.  In my judgment, when added to the interest of the plaintiff as a taxpayer of the state, it should be sufficient to move the court to require that the officer of the state should conform to the law in prescribing these specifications for these contracts.  The order should be reversed, with $10 costs and disbursements, and motion granted; order to be settled on notice before SMITH, P. J.

Order reversed, with $10 costs and disbursements, and motion granted, without costs.  Order to be settled on notice before SMITH, P. J.  All concur.