**ASHER et al. v. INGELS, Director of Department of Motor Vehicles of California, et al.**

No. 814.

District Court, S. D. California, Central Division.

Feb. 8, 1936.

Russell D. Garner, of Los Angeles, Cal., for plaintiffs.

U. S. Webb, Atty. Gen., and Frank Richards, Deputy Atty. Gen., for defendants.

Before WILBUR, Circuit Judge, and YANKWICH and STEPHENS, District Judges.

YANKWICH, District Judge.

The 1935 session of the California Legislature enacted a statute known as chapter 527 of the Statutes of 1935 (page 1605), which was also codified by the same Legislature as sections 146, 146.5, 180.5, and 371.5 of the California Vehicle Code

655

(St.1935, pp. 109, 116, 147). These sections are as follows:

"146. *Application for Registration of Vehicle Previously Registered Outside This State.* (a) Upon application for registration of a vehicle previously registered outside this State, the application shall be verified and shall also state such fact and the time and place of the last registration of such vehicle outside this State and the name and address of the governmental officer, agency, or authority making such registration, together with such further information relative to its previous registration as may reasonably be required by the department, including the time and place of original registration, if known, and if different from such last foreign registration; and, except as provided in subdivision (b) of this section, the applicant shall surrender to the department all license plates, seals, certificates or other evidence of foreign registration as may be in his possession or under his control.

"(b) No nonresident entering this State and subject to registration under the provisions of subdivision (b) of section 216, shall be required to surrender the evidences of foreign registration mentioned in subdivision (a) of this section."

"146.5. *Notice of Application for Registration of Vehicle Previously Registered Outside This State.* The department shall forthwith mail a notice of the filing of any application for registration of a vehicle previously registered outside this State to the governmental officer, agency, or authority which made the last registration of such vehicle outside this State. Such notice must contain like data as required on the application filed with the department. No vehicle previously registered outside this State shall be registered in this State nor shall the department issue any certificate of ownership, registration card, nor license plate or plates hereunder therefor prior to the expiration of ninety days from the day on which the application for registration thereof hereunder is filed with said department, but the foregoing limitations in this sentence shall not apply to commercial vehicles operating in interstate transportation nor affect the right of the department to grant temporary permits under section 147."

"180.5. *Restriction on Transfer of Vehicle Previously Registered Outside This State.* Neither the title to nor any interest in any vehicle previously registered out-

side this State shall be transferred within this State by any person, whether dealer, manufacturer, or private individual, unless such vehicle is then registered in this State under the provisions of this code."

"371.5. *Additional Registration Fee for Vehicle Previously Registered Outside This State.* In addition to the registration fee specified in section 370 and any weight fee, there shall be paid a registration fee of three dollars for the original registration within this State of every vehicle previously registered outside this State."

The plaintiffs are citizens of California, residing in Los Angeles, and are copartners engaged in the business of buying, selling, and trading in used automobiles with their principal place of business in Los Angeles. They have complied with the law relating to such business, and have posted, in conformity with the ordinances of the city of Los Angeles, a bond in the sum of $2,500 in favor of persons purchasing automobiles from them. The automobiles are purchased in states other than California through local dealers at prices substantially lower than they could be purchased in California. They are driven from such states to the place of business of the plaintiffs for the purpose of immediate resale to used-car dealers in California. In order to drive the automobiles over the highways outside of California, the plaintiffs must procure registration certificates and license plates from the proper authorities in the states where the automobiles are purchased. In order to sell the automobiles and to pass valid title, they must procure, immediately upon receipt of the automobiles at plaintiffs' place of business, certificates of ownership, registration cards, and license plates for the automobiles. The business of the plaintiffs is well established, and approximately a thousand out of state cars are imported into the county of Los Angeles monthly for the purpose of resale. The plaintiffs themselves resell about one-fourth of this number. The business built up by the plaintiffs is of the value of $25,000. It cannot be carried on without the purchase of automobiles out of the state and their resale to California residents. On January 2, 1936, plaintiffs purchased in the city of Phœnix, Ariz., a Ford automobile, and on the same day caused it to be registered and obtained a 1936 Arizona license therefor. They drove the automobile to Los Angeles, and on January 6th

applied to the defendant, Ray Ingels, director of the department of motor vehicles, Howard E. Deems, registrar of motor vehicles of the state of California, and Lon W. Butler, manager of the Los Angeles city office of the department of motor vehicles, for a California certificate of ownership, registration card, and license plates, and paid to them the sum of $3 registration fee and $2.71 personal property tax as required by the provisions of chapter 362, Statutes of 1935 (page 1312), and tendered all other papers and documents required by law. The defendants, basing their refusal upon the requirements of sections 146.5 and 371.5 of the Vehicle Code of California (St.1935, pp. 109, 147), declined to give to the plaintiffs a California certificate of ownership or a registration card or license plates.

The plaintiffs thereafter filed a verified application in the office of the defendants, supplying the necessary information under section 146 of the Vehicle Code (St. 1935, p. 109), tendering the sum of $6 registration fee and $2.71 personal property tax. That met with a similar refusal upon the ground that under the provisions of section 146.5 of the Vehicle Code (St. 1935, p. 109) no certificate of ownership, registration card, or license plates could be issued upon an automobile previously registered outside of the state until the expiration of 90 days from the day of the application for registration. On January 6th one J. K. Woods offered to purchase the automobile from the plaintiffs and to pay them $150 for it. Plaintiffs are desirous of selling the same, but are unable to do so because they have no certificate of ownership, registration card, or license plates. The offer of sale will lapse on January 10, 1936.

The bill of complaint, after setting forth the facts just given, alleges in substance: Should the plaintiffs sell or transfer title to the automobile before registering it, they are threatened with prosecution under sections 180.5 and 230 of the Vehicle Code (St.1935, pp. 116, 126). The threat of the defendants to enforce the provisions of the statutes referred to will destroy plaintiffs' business, for the reason that it is impossible to sell, and no retail used-car dealers will purchase, any motor vehicle unless the vendor thereof has a California certificate of ownership, registration card, and license plates. The enforcement of the law will destroy the

used-car business in California, because secondhand automobiles depreciate in value very rapidly, the interest charges on money invested for 90 days is prohibitive, storage for a similar period is expensive, the market for used automobiles is too uncertain to justify a 90-day wait, and the total average depreciation and maintenance cost of the type of automobile dealt in by plaintiffs over a 90-day period will amount to a hundred dollars.

By reason of these facts, it is contended that chapter 527 of the Statutes of California is unconstitutional and in violation of article 1, section 8, clause 3 (*the commerce clause*), of article 4, section 2, of the Constitution of the United States (*the immunities clause*), and of section 1 of the Fourteenth Amendment to the same Constitution (*the equal protection and due process clauses*). The complaint upon the basis of these facts asks a judgment declaring the act invalid and for permanent injunctive relief against its enforcement. Pending the final determination of the suit, an interlocutory injunction is sought. The defendants have moved to dismiss the bill and to strike certain allegations from it. They have also asked that the application for an interlocutory injunction be denied.

The motion to strike certain portions of the bill may be disposed of by denying it upon the ground that the portions sought to be stricken from the bill, while descriptive of the business and bordering on conclusions, are merely in the nature of narrative, and, even if superfluous, do not vitiate the pleading. The motion to dismiss is grounded chiefly upon the proposition that the bill does not state a cause of action, for the reason that no federal question is presented and that the enactment attacked is a valid exercise of the police power of the state.

Before considering the attack upon the act, it is well to refer to other sections of the California Vehicle Code relating to the registration of automobiles in general. When receiving an application for registration and when satisfied of its genuineness and regularity, and that the applicant is entitled to register the vehicle, it is the duty of the motor vehicle department to register it and keep a record in suitable books or on index cards. California Vehicle Code, § 150 (St.1935, p. 110). Upon registering the vehicle, the department must issue a certificate of ownership to the legal owner and the registration card to the owner or both to the owner if there is no legal owner to the vehicle. California Vehicle Code, § 151 (St.1935, p. 111). Upon registration, the department must issue to the owner two license plates. California Vehicle Code, § 156 (St.1935, p. 112). The title to a vehicle previously registered outside of the state or an interest in it cannot be transferred within the state of California by any person, whether dealer, manufacturer, or private individual, unless such vehicle is *then* registered in California under the provision of the Vehicle Code. California Vehicle Code, § 180.5 (St.1935, p. 116). A vehicle not registered cannot be driven lawfully upon the highways of the state of California. California Vehicle Code, § 140 (St. 1935, p. 108). The violation of these sections is made a misdemeanor. California Vehicle Code, §§ 140, 230 (St.1935, pp. 108, 126).

As already stated, one of the grounds of attack upon the act is that it is repugnant to clause 3, section 8, article 1, of the Constitution of the United States, commonly known as the commerce clause. This clause, among other things, gives the Congress the power to regulate commerce among the several states. Such commerce is said to include, not only *the fact of intercourse and of traffic*, but also the *subject-matter of intercourse and traffic*. The subject-matter of intercourse may be either things, goods, chattels, merchandise, or persons. See McCall v. California (1890) 136 U.S. 104, 10 S.Ct. 881, 34 L.Ed. 391; Cobb v. Department of Public Works (D. C.Wash.1932) 60 F.(2d) 631. And see A. L. A. Schechter Poultry Corporation v. United States (1935) 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. The state, in the exercise of its powers to regulate intrastate matters, may adopt measures which affect interstate commerce indirectly or incidentally, or the persons engaged in it. See Boston & M. R. R. v. Armburg (1932) 285 U.S. 234, 52 S.Ct. 336, 76 L.Ed. 729. The test of the validity of such regulations is that they do not impede the free flow of commerce. See Clyde Mallory Lines v. State of Alabama ex rel. State Docks Commission (1935) 56 S.Ct. 194, 80 L.Ed. ——. So in the realm of transportation regulations have been upheld which aim to levy a tax upon interstate automobile traffic passing over state highways or to establish a weight or other

standards upon such vehicles. Kane v. New Jersey (1916) 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Hicklin v. Coney (1933) 290 U.S. 169, 177, 54 S.Ct. 142, 78 L.Ed. 247; Clark v. Poor (1927) 274 U.S. 554, 555, 47 S.Ct. 702, 71 L.Ed. 1199; Interstate Busses Corporation v. Blodgett (1928) 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551; Sproles v. Binford (1932) 286 U.S. 374, 397, 52 S.Ct. 581, 76 L.Ed. 1167; Continental Baking Co. v. Woodring (1932) 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402; Stephenson v. Binford (1932) 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721. In the realm of the police power of the states, great liberality obtains in sustaining regulations. However, neither the exercise of the taxing power. nor of the police power by a state will be sustained if their effect is to establish economic barriers between the states. As stated by Mr. Justice Cardozo in Baldwin v. G. A. F. Seelig, Inc. (1935) 294 U.S. 511, 55 S.Ct. 497, 502, 79 L.Ed. 1032: "Neither the power to tax nor the police power may be used by the state of destination with the aim and effect of establishing an economic barrier against competition with the products of another state or the labor of its residents. Restrictions so contrived are an unreasonable clog upon the mobility of commerce. They set up what is equivalent to a rampart of customs duties designed to neutralize advantages belonging to the place of origin. They are thus hostile in conception as well as burdensome in result."

So repeatedly attempts to impose specific taxes upon the sale of goods originating in interstate commerce before the goods have come to' rest and have commingled with the goods of the state have been denied validity. So have also attempts to compel the acquisition of a license to carry on interstate commerce. See Welton v. Missouri (1875) 91 U.S. 275, 23 L.Ed. 347; Walling v. Michigan (1886) 116 U.S. 446, 6 S.Ct. 454, 29 L.Ed. 691; Barrett, President of Adams Express Co., v. New York (1914) 232 U.S. 14, 34 S.Ct. 203, 58 L.Ed. 483; Young's Market Co. v. State Board of Equalization (D.C.Cal.1935) 12 F.Supp. 140; Joseph Triner Corporation, v. Arundel (D.C. Minn.1935) 11 F.Supp. 145. With the widening of the scope of social control in recent years, there has been a judicial extension of the concept of the police power of the state. See Village of Euclid v. Ambler Realty Co. (1926) 272 U.S. 365, 47 S.Ct. 114,. 71 L.Ed. 303, 54 A.L.R. 1016; Home Building & Loan Association v. Blaisdell (1934) 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481; Nebbia v. New York (1934) 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; see, also, Farnsworth L. Jennings, Freedom of Contract (1934) 22 Cal.Law Review, 636. Nevertheless, the exercise of the police power by a state, whether the subject of its exercise be property or contract or the right to carry on a legitimate business or the protection of the health of its citizens by a state, is still limited by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution. Mr. Justice Holmes, in Noble State· Bank v. Haskell (1911) 219 U.S. 104, 31 S.Ct. 186, 188, 55 L.Ed. 112, 32 L.R.A.(N.S.) 1062, Ann.Cas.1912A, 487, has stated truly: "It may be said in a general way that the police power extends to all the great public needs. Camfield v. United States, .167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare."

Nevertheless, there must, be no arbitrariness or discrimination in the exercise of the power. And courts must, without substituting their judgment for that of the Legislature, be in a position to say that there is an actual relation between the law and the purported objective to be attained. See Lawton v. Steele (1894) 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Dobbins v. Los Angeles (1904) 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169; Bethlehem Motors Corporation et al. v. Flynt (1921) 256 U.S. 421, 41 S.Ct. 571, 65 L.Ed. 1029; Meyer v. Nebraska (1923) 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446; Jay Burns Baking Co. v. Bryan (1924) 264 U.S. 504, 507, 44 S.Ct. 412, 68 L.Ed. 813, 32 A.L.R. 661. The right to transact a lawful business is a privilege of national citizenship. Colgate v. Harvey (1935) 56 S.Ct. 252, 80 L.Ed. ——. Statutes which restrict unreasonably the right to sell one's property or to carry on a legitimate business have been declared repeatedly to be violative of the due process and the equal protection clauses of the Fourteenth Amendment. See Fulton v. District of Columbia (1894) 2 App.D.C.

431; State v. Taft (1896) 118 N.C. 1190, 23 S.E. 970, 32 L.R.A. 122, 54 Am.St.Rep. 768; Ex parte Quarg (1906) 149 Cal. 79, 80, 84 P. 766, 5 L.R.A.(N.S.) 183, 117 Am. St.Rep. 115, 9 Ann.Cas. 747; Warner-Quinlan Asphalt Co. v. Carlisle (1913) 158 App.Div. 638, 144 N.Y.S. 70; In re Farb (1918) 178 Cal. 592, 174 P. 320, 3 A.L.R. 301; Frost v. Los Angeles (1919) 181 Cal. 22, 183 P. 342, 6 A.L.R. 468; In re Robinson (1924) 68 Cal.App. 744, 230 P. 175; People v. Pace (1925) 73 Cal.App. 548, 238 P. 1089; Frost & Frost Trucking Co. v. Railroad Commission (1926) 271 U.S. 583, 584, 46 S.Ct. 605, 70 L.Ed. 1101, 47 A.L.R. 457; Tyson & Bro. United Theatre Ticket Offices v. Banton (1927) 273 U.S. 418, 47 S.Ct. 426, 71 L. Ed. 718, 58 A.L.R. 1236; Bethlehem Motors Corporation et al. v. Flynt, supra; People v. Lesser (1932) 123 Cal.App. 489, 11 P.(2d) 668; In re Wacholder (1934) 1 Cal.App.(2d) 254, 36 P.(2d) 705.

▮▮▮▮ We now consider the statute in question in the light of these requirements. The effect of the statute is to draw a distinction between secondhand automobiles upon the basis of origin. Secondhand automobiles acquired within the· state are entitled to immediate registration. California Vehicle Code, § 150 (St.1935, p. 110). Secondhand automobiles originating outside of the state of California must wait a full 90 days before they are entitled to registration. During that period, the automobile cannot be operated upon the public highways unless the buyer of the automobile obtains a special permit. The special permit, however, is not granted to the purchaser *as a matter of right.* It *may* or *may not* be granted arbitrarily by the department of motor vehicles. California Vehicle Code, § 147 (St.1935, p. 110). The practical effect of the provision is, therefore, that the purchaser of such an automobile originating in interstate commerce is compelled, after it has come to rest, to quarantine it for a period of 90 days. What is the purpose of such quarantine? We take judicial notice of the fact that the theft of automobiles has presented a very serious problem, which has come to the attention of the Congress through the enactment of the act commonly known as the Dyer Act. 18 U.S.C.A. § 408. It is also true, as contended by the state, that vehicles are the subject of chattel mortgages, and in many instances are sold on "conditional sales" contracts. It follows that, in order to protect the holders of (what is known in the automobile business as) "automobile paper" upon automobiles originating outside of the state, the state of California might, before changing the registration of an automobile, reasonably require proof of the fact that it is free and clear of all encumbrances and that its acquisition is not marred by theft. Were the act to require a thorough investigation of the correctness of the foreign registration and of the title, no question of discrimination could arise. But the *statute imposes no such obligation upon any one.* It is merely made the duty of the motor vehicle department, upon receiving an application for the registration of a vehicle previously registered outside of California, *to mail immediately* a notice of the filing of such application to the officer of the state in which the registration was made. *There is no* requirement for the investigation of the title. Unless, by the law of the particular state, the holders of chattel mortgages or of conditional sales contracts are required to register their encumbrances with the motor vehicle department, the information received from the foreign registrar would be silent upon the subject. It should not take, in the ordinary course of events, more than a few days to send and receive an answer to such an inquiry. But, even if it is so received, the motor vehicle department is powerless to issue a registration. Under the mandate of the law, the full period of 90 days must first expire. Even if we consider the regulation as one not aimed at the importation or sale in California of secondhand automobiles originating outside of the state, Pacific States Box & Basket Co. v. White (1935) 56 S.Ct. 159, 80 L. Ed. ——, and therefore not within the inhibition of the commerce clause, it is evident, nevertheless, from what precedes, that the regulation is an unwarranted interference with the rights of owners of automobiles to dispose of their property. The principle (adverted to by the Attorney General) that the state has the right to determine the condition upon which its roads shall be used has therefore no application here. The state has placed arbitrarily used automobiles into two arbitrary classifications. To one classification comprising automobiles originating in California it applies one rule. To them it grants a transfer for the asking. The other class consists of secondhand automobiles which have previously been reg-

istered in another state. Upon them it imposes a larger registration fee. (This requirement is justified by the different and additional services called for in the registration.) It also denies the owner the right to have them transferred to another for a period of 90 days. In this manner it imposes an unnecessary burden upon the person who imports into California secondhand automobiles for the purpose of resale or use. By compelling them to keep the merchandise out of use, it brings about a depreciation in its value. This depreciation is not compensated by any consideration of public policy other than the erection of a protective barrier in favor of the person who purchases a secondhand automobile previously registered in California. The 90-day period provided in the statute is practically a suspension of alienation for such length of time, based solely upon the idea that a possible lienholder of an encumbered car or the owner of a stolen car would probably trace it to the purchaser within that time and claim his interest in it.

This situation is assumed to be advantageous to the interest holder, for the car would be in "Quarantine" and advantageous to the repurchaser in California, as his chance of having purchased a car with defective title would therefore be somewhat lessened. But a ruinous period, during which the possibility of alienation is practically suspended, cannot be legislated against the thousands of legitimate transactions to maintain a flimsy barrier against the few fraudulent ones. It is practically saying that cars registered out of California cannot be sold in California for fear their titles may prove defective. The statute places an unreasonable burden upon the owner of an outstate registered car presently within the state and constitutes an unreasonable barrier upon interstate trade. The Supreme Court has stated in Baldwin v. G. A. F. Seelig, Inc., supra: "The importer must be free from imposts framed for the very purpose of suppressing competition from without and leading inescapably to the suppression so intended." See Real Silk Hosiery Mills v. Portland (1925) 268 U.S. 325, 326, 45 S.Ct. 525, 69 L.Ed. 982.

Such suppression of competition may be as effective through the exercise of the police power as through the exercise of the taxing power. Both may result in the unlawful erection of barriers between the states. Both may as effectively enthrone that arbitrariness which is a denial of the due process and the equal protection of laws guaranteed by the Fourteenth Amendment. Of the true effect of such provisions, the Supreme Court, in Buck v. Kuykendall (1925) 267 U.S. 307, 308, 45 S.Ct. 324, 326, 69 L.Ed. 623, 38 A.L.R. 286, has said: "Its primary purpose is not regulation with a view to safety or to conservation of the highways, *but the prohibition of competition.* It determines, not the manner of use, but the persons by whom the highways may be used. It prohibits such use to some persons, while permitting it to others for the same purpose and in the same manner." (Italics added.) See I. M. Darnell & Son Co. v. Memphis (1908) 208 U.S. 113, 118, 28 S.Ct. 247, 52 L.Ed. 413; Interstate Transit v. Lindsey (1931) 283 U.S. 183, 51 S.Ct. 380, and note thereto in 75 L.Ed. 953.

We conclude that the statute (excepting the requirement of the additional fee for registration) is an unconstitutional exercise of legislative power, and is therefore void, as violative of the commerce and of the due process and equal protection clauses of the Constitution.

The relief asked for by the complaint is mandatory in nature. The right to issue a mandatory injunction is within the judicial discretion. See In re Lennon (1897) 166 U.S. 548, 17 S.Ct. 658, 41 L. Ed. 1110; Parsons v. Marye (C.C.1885) 23 F. 113; Cobb v. Department of Public Works, supra. These cases deal with the power of courts to carry into effect a final decree through mandatory injunctions. There is, however, respectable authority for the exercise of such power pending the final determination of the action. See Trautwein v. Moreno Mut. Irr. Co. (C.C.A.9, 1927) 22 F.(2d) 374; In re Lennon, supra; Toledo, etc., Ry. Co. v. Pennsylvania Co. (C.C.1893) 54 F. 730, 19 L.R.A. 387; Rockaway Rolling Mill Corporation v. Delaware, etc., R. Co. (1927) 101 N.J.Eq. 192, 137 A. 650; Texas Pipe Line Co. v. Burton Drilling Co. (Tex. Civ.App.1932) 54 S.W.(2d) 190.

The motion to strike portions of the bill in equity and the motion to dismiss will be denied, with leave of the defendants to answer within 10 days. An interlocutory injunction will issue.