[No. 10,315.]

## EX PARTE FRANK.

CONSTRUCTION OF AN ORDINANCE OF A CITY. — A statute which authorizes the authorities of a city "to license and regulate" all such callings, trades, and employments as the public good may require, will be construed as empowering the corporation to exact a license for purposes of revenue, if the whole charter, and the general legislation of the State, warrants such construction.

AN ORDINANCE OF A CITY EXACTING A LICENSE. — An ordinance of a city exacting the payment of a license for the transaction of a business, passed under a general power conferred by its charter, must be reasonable, not oppressive—impartial, and must not restrain trade.

AN INVALID LICENSE ORDINANCE.—An ordinance of a city, passed under a general power conferred by its charter, which exacts a license for selling goods, and fixes one rate of license for selling goods which are within the corporate limits, or *in transitu* to the city, and another and much larger license for selling goods which are not in the city, or *in transitu* to it, is invalid as unjust, unequal, partial, oppressive, and in restraint of trade.

APPLICATION for discharge on *habeas corpus*.

*Joseph Mee*, for Petitioner.

*Marcus Rosenthal, Contra.*

By the Court, CROCKETT, J. :

The petitioner having been convicted of a misdemeanor for the violation of what is known as the " Sample-Sellers' Ordinance " of the City and County of San Francisco, and being restrained of his liberty upon process issued upon the judgment of conviction, is before us on a writ of *habeas corpus*, and claims that he is entitled to be discharged from custody, on the ground that the ordinance is unconstitutional and void.

The ordinance in effect provides that any person who, in the City and County of San Francisco, shall sell, or contract to sell, or cause to be sold, or solicit for the sale or purchase of any goods, wares, merchandise, distilled liquors, or drugs or medicines, jewelry, or wares of precious metals or stones, or any other property of any kind, except wheat, wine, wool, brandy, agricultural productions in the raw state, and imports of foreign goods, wares, and merchandise upon which duties have been paid or secured to be paid to the United States, and which have never been sold in the United States, and are still in original packages, whether on commission or otherwise, without at the time having the goods at or in the said city and county, or a bill of lading or receipt of a common carrier, showing on its face that the goods named therein have been shipped and are *in transitu* to said city and county, "shall pay a license in proportion to the amount of business done by him or them as follows." The ordinance then provides that those doing business to the amount of $250,000 and over per quarter shall constitute the first class, and shall pay a license fee of $2,000 per quarter, and then establishes seven other classes, according to the amount of business done, regulating the license fee to be paid by the amount of business done. Another chapter of the same ordinance provides for licensing persons engaged in the same general business of buying and selling the same kinds of merchandise within the corporate limits, and divides them into several classes, according to the amount of business done, but the license fee to be paid in this class of cases is far less than is exacted for a sample-seller's license. For example, the merchant, whose goods are within the corporate limits, and who does a business to the amount of

$250,000 per quarter, is required to pay a license fee of $100 per quarter, while a merchant engaged in the same business, but whose goods are not within the corporate limits, or actually *in transitu* to San Francisco, under a bill of lading, and whose business amounts to $250,000 per quarter, is required to pay a license fee of $2,000 per quarter—just twenty times more in the latter case than in the former.   About the same ratio of inequality pervades all the other classes established by the ordinance. The result is, that a merchant whose business it is to sell goods which at the time of the transaction are not actually within the corporate limits or *in transitu* under a bill of lading, is required to pay about twenty times more for the privilege of pursuing his avocation than another merchant doing business in the same city, and who deals in the same kinds of merchandise, but who buys and sells only goods which are actually within the corporate limits or *in transitu* under a bill of lading.   The discrimination is made to depend solely on the fact that in the one case the goods are either within the corporate limits or *in transitu* under a bill of lading, and in the other case they are not.

It is contended on behalf of the petitioner that the ordinance violates several provisions of the Federal Constitution, and particularly that which confers upon Congress the power to regulate commerce with foreign nations and among the several States.   But we do not find it necessary for the purposes of this decision to examine the questions of constitutional law which have been so ably and elaborately discussed by counsel, and shall rest our judgment on other grounds.   " A municipal corporation is the creature of the statute, invested with such power and capacity only as is conferred by the statute, or passes by necessary implication from the statutory grant."   (*Herzo* v. *San Francisco*, 33 Cal. 143; *Argenti* v. *San Francisco*, 16 Cal. 282; *Wallace* v. *San Jose*, 29 Cal. 180; Dillon on Municipal Corporations, sec. 55, *et seq.*; Cooley on Const. Lim. 191 to 195.)

It becomes material, therefore, to inquire what powers have been conferred upon the Board of Supervisors of San Francisco in respect to licensing occupations.   By the third section of the Act of March 30th, 1872, (Statutes 1871-2, p. 736) it is provided that the Board of Supervisors shall have power, by ordi-

nance, " to license and regulate all such callings, trades, and employments as the public good may require to be licensed and regulated, and as are not prohibited by law." When the power conferred upon the corporation, as in this case, is to " license and regulate " callings and occupations, a question has sometimes arisen in the Courts whether, under such a grant of power, the corporation could exact license fees for purposes of revenue, or should be limited to a sum reasonably sufficient to defray the expense of granting the license. (Dillon on Municipal Corporations, sec. 291.)

But the rule, as stated by Judge Dillon, is, that in construing the words of the grant the whole charter and the general legislation of the State respecting the subject-matter must be consulted in order to determine whether by the terms " license and regulate " it was intended to authorize licenses for purposes of revenue. Acting on this rule of interpretation, we are of opinion that it was intended to authorize the City and County of San Francisco to exact license fees as a source of revenue. There are, however, certain rules adopted by the Courts in construing the ordinances of a municipal corporation, passed under a general power conferred by statute on the corporation to pass ordinances on a given subject, which it is necessary to consider. An ordinance passed under a general authority of this nature must be, first, " reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the State "; second, it must not be oppressive; third, it must be impartial, fair, and general; fourth, it may regulate but must not restrain trade. (Dillon on Municipal Corporations, secs. 253 to 257 inclusive, and authorities there cited.)

By its charter the City of St. Louis was authorized to establish markets, market places, and meat-shops, provide for the government and regulation thereof, and the amount of licenses to be paid therefor, and to regulate the vending of meat, etc. A city ordinance was passed which prohibited any person, not being the lessee of a butcher's stall, from selling or offering for sale any fresh meat in quantities less than one quarter. In *St. Louis* v. *Weber*, 44 Mo. 547, this ordinance was assailed on the ground that it was an unreasonable exercise by the City Coun-

cil of the authority granted by the charter, and was therefore void. But while upholding the ordinance as not unreasonable, the Court states the rule applicable to this class of cases with clearness and precision : "If this ordinance is unequal, oppressive, and unjust; if it be not a legitimate regulation of the vending of meat, but partial and unfair, establishing monopolies, or subjecting either the seller or purchaser to unnecessary inconvenience or expense, it certainly should not be upheld. In assuming, however, the right to judge of the reasonableness of an exercise of corporate power, Courts will not look closely into mere matters of judgment where there may be a reasonable difference of opinion. It is not to be expected that every power will be always exercised with the highest discretion; and when it is plainly granted a clear case should be made to authorize an interference on the ground of unreasonableness." This, we think, is the true rule ; and it proceeds upon the theory that under a general grant of power to a municipal corporation to pass ordinances on a given subject, it will be presumed that it was not intended to clothe it with power to pass an ordinance which is clearly unreasonable, unjust, oppressive, partial, and unfair, or which contravenes public policy, or is in restraint of trade. But an ordinance will not be pronounced invalid by the Courts on either of these grounds, unless in a plain case. It is, however, for the Court, and not for the jury, to pass upon the validity of the ordinance. (Dillon on Municipal Corporations, sec. 261.)

Tested by these rules, the " Sample-Sellers' Order," now under review, must be held to be inoperative and void. It is obnoxious to all the objections above enumerated. It is flagrantly unjust, oppressive, unequal, and partial. It discriminates between merchants in the same place, dealing in the same kinds of merchandise, for no better reason than that one deals in goods either actually in the corporate limits, or *in transitu* under a bill of lading, while the other deals in goods outside the corporate limits, and not *in transitu* under a bill of lading. If this kind of discrimination be legitimate and valid, there is no reason why a merchant having his goods in a warehouse on a particular street might not be required to pay a license fee of ten

thousand dollars, while another merchant doing the same kind of business, in the same city, and with his goods stored in another street, would be required to pay only ten dollars. It also contravenes the public policy of the State, in that it obstructs commercial intercourse between the principal seaport city of the State and the interior; the policy being to foster and encourage commercial intercourse and a free interchange of commodities between the several sections. It is in restraint of trade, in that it exacts a heavy tribute from the owner of goods outside the corporate limits and not *in transitu*, as a condition on which he will be allowed to offer them for sale in the principal city and seaport of the State. But we need not multiply arguments to show the infirmities of this ordinance,

In the case of *Mayor &c.* v. *Althrop*, 5 Cold. 554, the Supreme Court of Tennessee, in an able and learned opinion, discusses the validity of an ordinance very similar to that now under review, and hold it to be void on the grounds to which we have adverted.

We are of opinion that the so-called " Sample-Sellers' Order " is invalid, and that the prisoner is illegally restrained of his liberty.

Ordered that he be discharged from custody.

Mr. Chief Justice WALLACE did not express an opinion.