DicemAN, J.
The original action was begun in the Superior Court of Cincinnati, by the plaintiff, Thomas C. Campbell, in behalf of himself and others, against the defendants, The City of Cincinnati, John Stevens, city comptroller, Fred Raine, county auditor, and John Zumstein, county treasurer, of Hamilton county. The suit was brought to enjoin two assessments, the first being to pay for property *467 condemned to open and extend Ashland street from McMil-len street to Myrtle avenue, in the city of Cincinnati, and the second assessment to pay the cost of grading, curbing and macadamizing Ashland street, between McMillen street and Myrtle avenue. Important questions of law arising, the case was reserved to the General Term of the Superior Court, where a final decree was rendered, dismissing the petition and the amendment of the petition, except as to a claim by the plaintiffs of a two per cent, reduction and a twenty-five per cent, limitation of assessment. The plaintiffs' now seek to reverse the judgment of the Superior Court. On the authority of Caldwell v. Carthage, decided at the present term, we should hold the two assessments to be valid, and affirm the judgment of the court below, were it not that we deem invalid the ordinance for appropriating property to open and extend Ashland street, and the ordinance for grading, curbing and macadamizing th^t street.
As alleged in the amendment of the petition found by the Superior Court to be' true, the ordinance of appropriation, No. 3937, for opening and extending the street, was passed in the following manner:
“In the Board of Aldermen in said city, on April 22,1887, said ordinance, No. 3937, having been read the first time on that day, on motion the rule oí law requiring ordinances to be read on three different days was suspended as to said ordinance and also as to an ordinance to appropriate property to open and extend Eincoln avenue, and also as to an ordinance to appropriate property to widen Eastern avenue, said suspension being ordered as to all three of said ordinances without a separation or division of the question, on one vote and one roll call of yeas and nays, and by twenty-three favorable votes out of a membership of thirty members, and said order of suspension providing that the three ordinances should go to the ■ second reading and engrossment and the third reading and final passage on said day.”
“Thereupon, each of said ordinances having then been read a second time on said day and then a third time on said day, all three of them were then and there on said day voted upon without a separation or division of the question, *468 and were finally passed on said vote on one roll call of the yeas and nays and by twenty-three favorable votes, and without any other or further suspension of said rule.
“ In the Board of Councilmen of said city, on May 6th, 1887, said ordinance, No. 8937, having been read the first time on that day, on motion said rule of law was also suspended as to said ordinance, and also as to said ordinance to open and extend Eincoln avenue, said suspension being ordered as to both said ordinances without a separation or division of the question, and on one vote and one roll-call of the yeas and nays, and by forty favorable votes out of a membership of fifty members, and said order of suspension providing that both said ordinances should go to the second reading and engrossment and the third reading and final passage on said day.
“ Thereupon, each of said ordinances having then been read a second time on said day, and then the third time on said day, both of them were then and there on said day voted upon without a separation or division of the question, and were finally passed on said vote on one roll-call of the yeas and nays, and by iorty favorable votes, and without any other or further suspension of said rule of law.”
And the ordinance, No. 4090, for the improvement of the street by grading, curbing and macadamizing, was passed by the board of aldermen, on July 18th, 1888, — having been previously passed by the board of councilmen — and as follows:
“ After having been read the first time on said day, on motion the rule of law requiring ordinances to be read on three different days was suspended as to said ordinance, and also as to an ordinance to improve Shillito street, said suspension being ordered as to both of said ordinances without a separation or division of the question, on one vote and one roll-call of yeas and nays, and by twenty-three favorable votes out of a membership of thirty members, and said order of suspension providing that both ordinances should go to the second reading and engrossment and to the third reading and final passage on said day.
*469 “Thereupon, each of said ordinances having been read a second time on said day and then the third time on said day, both of them were then and there on said day voted upon without a separation or division pf the question, and were finally passed on said vote and on one roll-call of the yeas and nays, and by twenty-three favorable votes, and without any other or further suspension of said rules of law.”
Section 1694 of the Revised Statutes, provides that: “ By-laws, resolutions and ordinances, of a general or permanent nature, shall be fully and distinctly read on three different days, unless three-fourths of the members elected dispense with the rule; and the vote on such suspension shall be taken by yeas and nays, and entered on the journal.” The first question that arises is, was the appropriation ordinance, or the improvement ordinance, for the passage of which without being read on three different days, it is claimed, the rule was suspended, an ordinance of a general or permanent nature, within the meaning of the statute.
Whether those ordinances were of a general nature, we deem it unnecessary to determine in the decision of the present case; but, in our judgment the ordinances were of a permanent nature as distinguished from such as are of a temporary character. The subject-matter of the ordinances was of a permanent nature — the same test we would apply in making the character of a law as general or local, to depend on the character of its subject-matter. Property was to be condemned for the purpose of extending a street, A new thoroughfare was to be opened for the public travel, without limit as to continuance in time. The community at large would become interested in the improvement, as a highway to be kept constantly open. And the appropriation ordinance provided, that the property condemned should be paid for by an assessment on abutting lots and lands payable in ten annual installments.
When the street was opened and extended, the improvement ordinance was designed to render it lasting and durable, by grading, curbing and macadamizing. The amount of assessment per foot front upon abutting property, and made a lien thereon, to pay the cost of the improvement would *470 sufficiently indicate that the improvement was, not of a temporary nature, but rather one of an abiding and durable nature. A permanent way, as applied to the road-bed and superstructure of a railway, was originally so-called in England, as being the company’s finished road, in distinction from the contractor’s-temporary way.
A distinction is sometimes drawn between an ordinance and a resolution, by which, the one prescribes a permanent rule of conduct or government, while the other is of a temporary character and prescribes no permanent rule of government. The statute, however, refers both to “ resolutions, and ordinances, of a general or permanent nature.” But in Upington v. Oviatt, 24 Ohio St. 232, in which the preliminary resolution declaring the necessity of the proposed improvement was not adopted with the prescribed formalities, was not read on three different days, nor such reading dispensed with by a vote of three-fourths of the members elected, the court say: “ It was not a resolution of a permanent nature. It made no provision for the future, but simply declared an existing fact.” With such criteria of a temporary resolution, in the given instance, we would readily distinguish the ordinances under consideration as having a continuous effect and permanent nature, within the statutory meaning.
The two ordinances being therefore of a permanent nature, we may next inquire, whether they were adopted in conformity to the provisions of section 1694, of the Revised Statutes; and, if not so adopted, whether those provisions were mandatory or directory only.
It is claimed that the appropriation ordinance was illegally passed, for the reason that the rule requiring ordinances to be read on three different days unless the rule be dispensed with by a three-fourths vote, was dispensed with as to this ordinance in connection with two other appropriation ordinances, on one vote and on one call of the yeas and nays ; and that on the same day, the three ordinances were severally read the second and third time, and finally passed together on one and the same vote. And it is further claimed that the ordinance to improve Ashland street was also ille- *471 gaily passed, for the reason that though properly passed in the board of council, the rule was suspended and the ordinance was passed in the board oí aldermen, in connection with an improvement ordinance for another street, in the same manner in which the ordinance of appropriation was passed.
The purpose of the provision that ordinances shall be read on three different days before being put upon their passage, was doubtless to prevent hasty legislation, and secure a proper degree of deliberation. If the rule requiring such reading is to be dispensed with as to several ordinances, the efficiency of the statute will best be preserved by examining the merits of each ordinance separately, and determining the expediency of considering it on three different days, by its intrinsic importance, without linking and complicating it with other ordinances of perhaps minor importance.
The statute does not in express words require the vote on dispensing with the rule, or on the final passage, to be taken separately on each ordinance, yet the obvious design of the law might be defeated if the vote were not thus taken. And, where land is to be condemned for the opening and extension of a street, and an assessment in consequence is to be levied which will become a lien on the citizen’s property; and where it rests with the municipality to determine the necessity of the improvement and all the steps and details necessary to its completion, the property ownér is entitled to the undivided judgment of the council upon an ordinance that would so materially affect his interests.
In Bloom v. Xenia, 32 Ohio St. 461, the ordinance committee of the town council of Xenia reported two ordinances, one relating to elections, and the other to prohibit ale, beer, and porter houses. The council was thus apprised of the ordinances upon which it would be called to act. The rules were thereupon suspended, and the first ordinance was passed, and without any other or further suspension of the rules, the second ordinance was passed. The court, in the opinion, say: “ Does one vote to dispense with the rules suspend them indefinitely ? Can they be thus suspended for an entire session of the council, and measures of every character passed at *472 once ? This, we think, would be entirely too liberal.” With but slight difference, the same objections would follow, and the same mischief from crude and hurried legislation would result, where,- by the same and a single vote, the rule requiring a reading on three different days is dispensed with as to several ordinances by name.
While section 1694 of the Revised Statutes reads, “ Bylaws, resolutions, and ordinances, of a general or permanent nature, shall be fully and distinctly read on three different days,” etc., the original of that section, namely, section 98 of the Municipal Code, 66 Ohio E. 166, reads, “ All by-laws, resolutions and ordinances, of a general or permanent nature,, shall be fully and distinctly read on three different days.” But, where all the general statutes of a state are revised and consolidated, there is a strong presumption that the same construction which the statute received before revision, should be applied to the enactment in its revised form, although the language may have been changed; and the same construction will prevail as before the revision, unless the language of the new act plainly requires a change of construction, to conform to the manifest intent of the legislature. State ex rel. v. Stockley, 45 Ohio St. 304, and cases cited. The revised section, it is evident, requires no different construction from that given to the original section, in Bloom v. Xenia, supra. There, it is said: “ The word 'all* may mean ‘ every,’ and is to be so construed in this connection. We may therefore read the law thus : Every by-law, resolution, or ordinance must be read on three different days, unless the rule is dispensed with. The rule must therefore be dispensed with as to the particular ordinance.”
Section 1693 of the Revised Statutes provides that, “Ordinances, resolutions and by-laws shall require for their passage or adoption the concurrence of a majority of all the members elected, * * * and the vote on their passage or adoption shall be taken by yeas and nays and recorded on the journal.” Giving to this section, in connection with its original — section 97 of the municipal code — the same construction put upon section 1694, several ordinances should not be declared passed at the same time, and upon the same *473 and a single vote of the council, but every ordinance should require for its passage a separate and distinct yea and nay vote. A contrary mode of legislation should be discouraged as opposed to public policy — as inimical to the public interests. The combination of several ordinances for passage on one and the same vote, will too often gain the support of those who disapprove of one or'more of them, but who expect in return to insure support for such of the measures as they favor. And in this connection, we may cite the appropriate words of Judge Cooley, in his work on Constitutional Eimitations: “There have been cases, as we happen to know, in which several- bills have been put on their passage together, the yeas and nays being once called for them all, though the journal is made to state falsely a separate vote on each. We need hardly say that this is a manifest violation of the constitution, which requires separate action in every case; -and that, when resorted to, it is usually for the purpose of avoiding another provision of the constitution, which seeks to preclude “log-rolling” legislation, by forbidding the incorporation of distinct measures in one and the same statute.” 6 ed, 168, note.
It is contended however that the provisions of section 1694 are to be treated as directory only; but, notwithstanding a conflict of authorities, we are not disposed to depart from the principles announced'in Bloom v. Xenia and, in accordance with the decision of that case, we think, the provisions of the section should ,be held to be imperative or mandatory. Whether a provision of the constitution as to the passage of laws is mandatory or directory to the legislature will not furnish unerring guidance in municipal legislation. The whole legislative power of the state is vested by the constitution in the General Assembly, subject to the special limitations contained in that instrument upon the exercise of that power; and if there is an apparent failure to comply with- the constitutional directions, the judicial department of the government will not forget that every reasonable intendment is to be made in favor of the proceedings of the legislature. “ It is not to be presumed that the assembly, or either house of it, has violated the *474 constitution.” Miller & Gibson v. The State, 3 Ohio St. 475.
But municipal corporations act not by an inherent right of legislation, like the legislature of the state. They are governments of enumerated powers acting by a delegated authority. They are creatures of the statute, invested with such power and capacity only as is conferred by the statute, or passes by necessary implication from the statutory grant, and their powers must be strictly pursued. Cool. Con. Lim. 6 Ed. 227; Willard v. Killingworth, 8 Conn. 247; Ex parte Frank, 52 Cal. 606. The rule therefore as stated in numerous adjudged cases is, that the mode of procedure to be followed in the enactment of ordinances as prescribed by statute must be strictly observed. Such statutory powers constitute conditions precedent; and unless the ordinance is adopted in compliance with the conditions and directions thus prescribed, it will have no force. 17 Eng. & Am. Ency. of Raw, 238, and cases cited.
In Clark v. Crane, 5 Mich. 151, the Supreme Court laid down the rule that, “what the law requires to be done for the protection of the tax-payer is mandatory, and cannot be regarded as directory merely.” The requirement that ordinances of a general or permanent nature, shall be fully and distinctly read upon three different days, being designed as a safeguard against rash and inconsiderate legislation, and being in a great degree essential to the protection of the rights of property, it should likewise be deemed a mandatory measure intended as a security for the citizen.
It would be difficult to lay down any general rule as to when the provisions of a statute are merely directory, and when mandatory or imperative. But we have reached the conclusion, that the appropriation ordinance for extending and the ordinance for improving Ashland street were not legally passed. The judgment below, we think, should be reversed so far as the petition and the amendment of the petition and the first and third causes of action were dismissed, and the cause should be remanded for rendition of judgment in favor of the plaintiffs in error, as prayed for in their pleadings.

Judgment accordingly.