[Crim. No. 800.   Third Appellate District.—September 23, 1924.]

## In the Matter of F. A. ROBINSON for a Writ of Habeas Corpus.

[1] Constitutional Law—City Ordinance—Solicitors—Location of Business Houses—Discrimination—Invalidity of Ordinance.— A city ordinance which discriminates against solicitors representing business houses outside the city limits and those representing houses within the city, by imposing a heavy burden upon the former and entirely exempting the other, though doing exactly the same kind and character of business and conducted in the same manner, is void.

---

(1) 12 C. J., p. 1117, sec. 833 (Anno.); 37 C. J., p. 205, sec. 56.

1. See 16 Cal. Jur. 238; 17 R. C. L. 483.

PROCEEDING on Habeas Corpus to secure release from custody for alleged violation of city ordinance. Writ granted.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber for Petitioner.

Stephen Downey and Joseph L. Knowels for Respondent.

PLUMMER, J.—The petitioner in this cause was arrested for having failed to take out a license, pursuant to the provisions of section 74 of Ordinance 159, 4th series, of the city of Sacramento, and seeks his discharge herein on the ground that the provisions of said ordinance, under and by virtue of which he was arrested, are unconstitutional and void.

Section 74 of said ordinance, among other things, provides as follows: "A solicitor within the meaning of this ordinance is defined to be any person who goes from house to house, or from place to place in the City of Sacramento, selling or taking orders for, or offering to sell or take orders for goods, wares, or merchandise or any article for future delivery, other than newspapers, or for services to be performed in the future, or for the making, manufacturing or repairing of any article or thing whatsoever for future delivery, provided, however, that this section shall apply only to solicitors who demand, accept or receive payment or deposit of money in advance of final delivery.

"Provided, further, that under no circumstances shall this ordinance or any section thereof be construed to require that a license be obtained where any regularly established business house which has been established more than three months in the city of Sacramento, sends out solicitors to take orders for goods to be delivered from such established place of business or for making delivery of such goods."

The ordinance then provides that it shall be unlawful for any person to act as a solicitor within the meaning of this section, without having first secured a license from the city controller. A bond in the sum of five hundred dollars is also provided for. The amount of the license is fixed at two hundred dollars per quarter.

On the part of the petitioner, it is contended that the ordinance in question is violative of sections 11 and 21 of article I of the state constitution. Section 11 reads: "All laws of a general nature shall have a uniform operation," and section 21 provides that: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature, nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

As contended by the petitioner, it will be noticed that the ordinance treats of and relates simply to solicitors, and applies only to solicitors who ask and receive a deposit of money at the time of taking the order and preceding the delivery of the article for which the order is taken, and, in doing this, it is divided into three classes:

"1. Solicitors for newspapers;

"2. Solicitors for orders to be filled from established houses in the city of Sacramento;

"3. Solicitors for orders to be delivered from business houses outside the city of Sacramento."

Of these classes a license tax is required only of those who come within the third subdivision, and upon this class a tax of two hundred dollars per quarter is imposed. The petitioner belongs to the third class.

There is another distinction made in the ordinance, to wit, that applying to business houses in the city of Sacramento which have not been established or had a permanent place of business for a period of at least three months before sending out solicitors. But, as this distinction or classification is not directly involved in this proceeding, we shall not attempt to determine whether this provision in the ordinance affects its validity.

[1] It will be observed that the boundary line of the incorporation known as the city of Sacramento determines the applicability of the provisions of the ordinance relating to the payment of a license fee. It is not the character of the business transacted. It is the place of the location of the storehouse or warehouse or headquarters from which a solicitor draws his supplies that determines whether or not he, the solicitor, is subject to the pains and penalties of the

ordinance. If he draws his supplies and fills his orders
from a house situated within the exterior limits of the city
of Sacramento, then he is free from all the provisions of
the ordinance, but if he fills his orders from a house situated
outside the city limits, whether it be in or outside of the state
of California, then he must necessarily pay the sum of two
hundred dollars per quarter, and also give a bond to protect
the persons from whom he may have taken orders. There
are two restrictive provisions of the ordinance which relate
exclusively to solicitors representing outside houses that do
not apply to local houses, or houses having their situs inside
the corporate limits of the city of Sacramento, to wit: the
giving of a bond and the payment of the sum of two hun-
dred dollars per quarter or an annual sum of eight hundred
dollars. It will also be noticed that the restrictive provisions
of the ordinance apply exclusively to solicitors. They have no
application to the houses themselves. It has frequently been
held that an ordinance requiring the payment of a license fee
may, in its classification, fix a sum to be paid by the solicitors,
and also a different or other sum by established business houses,
but that classification is not involved herein. It is simply
the question whether the solicitor represents an inside or an
outside business establishment. In the one case, he is sub-
ject to the provisions of the ordinance; in the other, he is
exempt therefrom, although in both cases he may be doing
exactly the same kind, character, and volume of business. It
will also be noticed that the ordinance applies to solicitors
engaged in interstate commerce, as well as those representing
houses within the state of California but outside the cor-
porate limits of the city of Sacramento, and so comes within
the long line of decisions of the United States supreme court
wherein it has been held repeatedly that no municipality
has the power, even for purposes of regulation, to place a
heavier burden upon interstate commerce than upon domes-
tic trade of the same kind and character.

In support of the ordinance the attention of the court is
called to the case of *Real Silk Hosiery Mills etc.* v. *City of
Portland,* 297 Fed. 897. The ordinance in question, as a
part of section 74, is drafted along somewhat similar lines
to the ordinance considered in the Portland case, but con-
tains one radical departure therefrom, which take it out of

all the reasoning of the court in the Portland case. In the Portland case, section 1 of the ordinance defined a solicitor just as we find that term explained in the Sacramento ordinance, to wit: "One taking orders for goods, wares and merchandise and receiving a deposit of money in advance of final delivery." The Portland ordinance also required the giving of a five hundred dollar bond. Were this all of the provisions of the ordinance now under consideration, we might consider the case relied upon by the respondents as authority for the upholding of the provisions of section 74 or Ordinance 159, 4th series, of the city of Sacramento.

The ordinance of the city of Sacramento, however, contains a provision which not only takes it out of the reasoning of the federal court in the Portland case, but sets it in direct opposition thereto. It is found in that portion of the section which provides that: " . . . under no circumstances shall this ordinance or any section thereof be construed to require that a license be obtained where any regularly established business house which has been established more than three months in the City of Sacramento, sends out solicitors to take orders for goods to be delivered from such established place of business or for making delivery of such goods." Had this provision been found within the terms of the Portland ordinance then there might be some weight to be given to the decision of the federal court. Whether that decision be or be not correct, so far as it touches the question of interstate commerce, from what we have just said, it is wholly inapplicable to the instant case.

Reliance is also placed by the respondents on the case of *Ex parte Haskell*, 112 Cal. 412 [32 L. R. A. 527, 44 Pac. 725]. In that case, an ordinance of the city of Chico placed a tax of fifty dollars per quarter on all persons other than those having a regular place of business. Haskell, a traveling salesman for a house in the city of Oakland, was arrested for violation thereof, and, upon *habeas corpus* proceedings, the ordinance was upheld, but, in the opinion of the court, language was used which applies directly to the ordinance now under consideration. It was there said: "It may be conceded that, if it could be said to discriminate in favor of residents of the city of Chico by requiring such license only from nonresidents engaged in the line of business pursued

by Haskell, it would be bad; or if it discriminated against residents of the state, or against merchandise from without, or not the product of, the state, that it would be void, as being in effect a regulation of interstate commerce—something entirely within the power of Congress. . . . It in no way discriminates, as to the class against which it is directed, between those living within the city and those without, but is broad enough to include all of such class wherever residing.'' In other words, the Chico ordinance upheld in the Haskell case did not do the very thing which the supreme court declared would make it bad and which thing the city council of the city of Sacramento did when adopting the ordinance now under consideration. There is a distinct and positive discrimination between solicitors carrying on the same kind of business, taking orders in the same manner, between those representing houses outside of the city of Sacramento and those within the city. One class is placed under a heavy burden, the other is exempted entirely.

A very similar question involving that of discrimination was before the supreme court in the case of *In re Blois,* 179 Cal. 291 [176 Pac. 449]. There an ordinance of the city of Palo Alto was held void which provided for the inspection of laundries by its health officers and imposed an inspection fee and mileage charge for the inspector in an amount which was five times as great for one whose laundry was located in another city as that imposed on local establishments, etc. The court there held, in considering the police powers of municipalities, that: ''Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws. (Article XI, section 11, State Constitution.) In the exercise of the powers thus conferred the municipality is limited by the terms of article I, section 21, of the Constitution, which provides: ' . . . Nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.' This latter section of the constitution has been given direct application to statutes and ordinances which have been enacted and sought to be enforced either by the state or by political subdivisions thereof, and in which attempts have been made to discriminate in favor of or against particular persons or

classes of persons as to whom no reasonable basis of discrimination can be seen to exist; and in all such cases the courts of this state have uniformly held such attempted legislation to be void. (*Ex parte Frank*, 52 Cal. 606 [28 Am. Rep. 642]; *In re Smith*, 143 Cal. 368 [77 Pac. 180]; *Ex parte Dickey*, 144 Cal. 234 [103 Am. St. Rep. 82, 1 Ann. Cas. 428, 66 L. R. A. 928, 77 Pac. 924]; *Ex parte Hayden*, 147 Cal. 649 [109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184, 82 Pac. 315]; *Ex parte Foley*, 172 Cal. 744 [Ann. Cas. 1918A, 180, 158 Pac. 1034]; *In re Hines*, 33 Cal. App. 45 [164 Pac. 339].)''

In the Blois case the difference in the burden was only five times as great upon the outsider as that imposed upon the one doing business within the city limits of the city of Palo Alto. In the instant case, if calculated by the quarter, it would be two hundred times as great, or calculated by the year, it would be eight hundred times as great.

In the case of *In re Hines*, 33 Cal. App. 45 [164 Pac. 339], the court had under consideration the ordinance of the city of Venice which fixed the license fee on every person, firm, or corporation carrying on a laundry within the corporate limits of twelve dollars per annum, and upon every person, firm, or corporation operating or maintaining a wagon for the delivery of laundry work to and from any laundry situated outside the city of Venice, the sum of $130 per annum for each wagon or vehicle. After quoting section 21 of article I of the state constitution, the court said: ''We are of the opinion that the provisions of the ordinances under which petitioner has been convicted attempt to create and enforce a discrimination not based upon differences in the nature of the business being transacted or differences in the manner of conducting the same business, or any other difference other than the mere fact of difference in destination of the goods collected and delivered by wagons collecting for laundries located outside of the city and the destination of goods collected for delivery to laundries within the city. The license provisions in question are plainly devised as a protective tariff for the benefit of laundries located in the city of Venice or laundry wagons doing business with laundries located in the city of Venice, and apparently they have no other purpose.''

In the case of *Ex parte Frank*, 52 Cal. 606 [28 Am. Rep. 642], the question of the location of houses from which orders were filled was held to furnish no reasonable distinction for a classification which placed a license fee upon one and exempted the other, as the depot of supplies was either inside or outside the city of San Francisco.

In the case of *In re Hart*, 36 Cal. App. 627 [172 Pac. 610], it was held that: "A city ordinance, requiring the payment of a license fee of twelve dollars per annum by every person selling or contracting to sell merchandise, whose establishment is within the boundaries of the city, and the payment of a license fee of sixty dollars per annum by every person selling or contracting to sell merchandise, whose establishment is outside of the city limits, is discriminatory and void, as an attempted protective tariff for the benefit of business located in the city."

In the case of *In re Riley*, 39 Cal. App. 58 [177 Pac. 854], a similar situation was presented as that we are now considering. An ordinance of the city of Redwood requiring the payment of a license by solicitors soliciting business for cleaning and dyeing work to be done and performed by an establishment outside of the city and exempting solicitors soliciting like business for plants situated within the city was held to be void, under the constitutional provision which we have hereinbefore set forth.

As stated in the Blois case, the city council possesses and may exercise certain specified police powers, but it cannot, under the guise of exercising its police powers, abrogate the provisions of section 21 of article I of the state constitution.

Without deciding whether the provision of the ordinance requiring the giving of a bond is or is not a reasonable police regulation, it is evident that the ordinance under consideration goes much further. As argued by petitioner: "It deprives the solicitor for an outside business house of the right to conduct his business on equal terms with the solicitor for the local business house. It deprives all business houses outside of the City of Sacramento of the right to secure trade in the City of Sacramento on terms that shall be the same as those on which local business houses solicit trade."

Being of the opinion that that portion of the ordinance which discriminates against solicitors representing outside

houses and those representing houses within the city of Sacramento, by imposing a heavy burden upon the one and entirely exempting the other, though doing exactly the same kind and character of business and conducted in the same manner, renders section 74 of Ordinance 159, 4th series, of the city of Sacramento, null and void, it is hereby ordered that the writ prayed for be and the same is hereby granted and the petitioner discharged.

Hart, J., and Finch, P. J., concurred.