[Civ. No. 626. Fourth Appellate District.—February 8, 1932.]

E. A. HOFFMAN CANDY COMPANY, INC. (a Corporation), Appellant, v. CITY OF NEWPORT BEACH (a Municipal Corporation) et al., Respondents.

Fredericks, Hanna & Morton and Byron F. Story for Appellant.

Roland Thompson for Respondents.

MARKS, J.—Appellant is a California corporation with its principal place of business in the city of Los Angeles. It was engaged in the business of manufacturing candy and confections and selling its products to retail stores in various cities and communities in southern California, conducting this business from its central plant in Los Angeles. Its salesmen solicited and. secured orders from retail merchants which were filled by delivering the merchandise to the purchasers in motor-trucks belonging to appellant and operated over the public highways and city streets.

Respondent City of Newport Beach is a city of the sixth class in Orange County, and respondent R. R. Hodgkinson is its city marshal.

On May 27, 1929, the city council of Newport Beach adopted its Ordinance Number 361, imposing a license tax upon various enterprises conducted within its boundaries. By section 78 of the ordinance a license of $12 per annum is placed upon stores or places of business where articles of personal property are loaned, rented, let, served or sold. Section 79 of the ordinance provides as follows: "Every person, firm or corporation not specifically mentioned in this ordinance, conducting, managing or carrying on the business of running, driving or operating any automobile, automobile truck, automobile tank wagon or any other motor vehicle used for the transportation of baggage, freight, household goods, merchandise, lumber, brick, cement, oil, rock or gravel, shall pay an annual license tax of $10.00 for each such

motor vehicle.'' The ordinance provides punishment by fine or imprisonment for violation of any of its terms. No license was imposed upon salesmen soliciting orders from retail merchants.

Appellant refused to pay the license for its trucks which were operated over the city streets of Newport Beach in delivering its merchandise. The city police officers threatened to arrest the operators of the unlicensed trucks and appellant brought this action to enjoin respondents from enforcing the ordinance against it and making such arrests.

The complaint alleges the foregoing facts and others not necessary to detail here. ▆ It is the theory of appellant that the provisions of the license ordinance affecting it are unconstitutional and void because they are discriminatory in two particulars; first, because it permits local merchants having an established place of business in the city upon which a license is paid under the provisions of section 78 of the ordinance to make deliveries to customers by truck without paying a special license on such vehicle, and, second, because it permits other manufacturers similarly situated and conducting a business similar to that of appellant, to deliver goods by common carrier to retailers within the city without paying the trucking license. The first contention of appellant has been decided adversely to it by our Supreme Court in the case of *Ex parte Haskell*, 112 Cal. 412 [32 L. R. A. 527, 44 Pac. 725], and in numerous other cases. The second contention deserves careful consideration.

The respondent city is authorized by law to levy a license for the purpose of revenue and regulation upon business conducted within its limits. Appellant admits that it is and was at all material times engaged in conducting the business of delivering merchandise to its customers by trucks operated and driven by its employees over the public streets of the city. It also admits that it has paid no license on its trucks and intends to continue such business without paying the license.

Respondents filed a general demurrer to the complaint, which was sustained without leave to amend. Thereafter, before the entry of judgment, appellant moved the court for leave to file an amended complaint, which motion was denied. ▆ It then filed a notice of appeal to the Supreme Court from the order sustaining the demurrer

and from the order denying the motion. After the record had been filed in the Supreme Court, counsel stipulated that the appeal be deemed taken from the judgment and that the record submitted be deemed to be the duly authenticated record on appeal from the judgment as well as the two orders, and the notice of appeal amended to conform to the stipulation.

The orders are not appealable and the appeal therefrom must be dismissed. (Sec. 963, Code Civ. Proc.) The stipulation was filed in the court below before the time for appeal from the judgment had expired. It contains the statement "that the appeal herein shall be deemed to be and is an appeal from said judgment of May 28, 1930, as well as from the orders referred to in the notice of appeal, and said notice of appeal shall be deemed to be and is hereby amended accordingly". Without deciding the question we shall regard the notice of appeal amended by the stipulation and the appeal from the judgment properly before this court after its transfer here from the Supreme Court. Respondents do not raise the question of the sufficiency of this appeal from the judgment.

The amended complaint contains but few allegations not in the original complaint. None of these affect the merits of this appeal. I will, therefore, confine myself to a consideration of the question of whether or not the allegations of the complaint state a cause of action.

The single question to be considered on this appeal is whether the license ordinance of the City of Newport Beach has the effect of discriminating between the business carried on by appellant in such city and similar business carried on by another in the same manner in the same city, and consequently, whether or not it violated the provisions of the federal and state Constitutions guaranteeing to all citizens the equal protection of the law. If the effect of the sections of the ordinance in question is to discriminate for or against the business of one of a particular class they must fail; if they be found to apply to all in a particular class conducting business in a similar manner within the limits of the city, they must be upheld and the judgment of the lower court affirmed.

The principle underlying the doctrine of equal protection and uniform application of the law is well defined and well understood and does not permit of question at this time. It

is only when these principles are sought to be applied to the facts of an individual case possessing unusual circumstances that any question can arise and occasionally confusion follow. It is necessary to briefly summarize these underlying principles before attempting to apply them to the facts of the instant case.

While the license ordinance may not discriminate in the burden of the charge placed upon those exercising the same privileges in the same manner within the same jurisdiction, the governing .body of a municipality may classify business carried on within its limits and impose a license charge upon all those naturally falling within such class different in amount from that charged those within all other classes, fixing the different charges upon the separate classes by any standard or rule which is fair and reasonable and not confiscatory. The only requirement of the constitutional provisions is uniformity in the operation of the taxing power and uniformity in the burdens placed upon the license payer. This requirement of the Constitutions is fully satisfied when the charge imposed is uniform as to the class to which it applies. (*San Francisco* v. *Liverpool etc. Ins. Co.,* 74 Cal. 113 [5 Am. St. Rep. 425, 15 Pac. 380]; *Foster* v. *Police Commrs.,* 102 Cal. 483 [41 Am. St. Rep. 194, 37 Pac. 763]; *Laurelle* v. *Bush,* 17 Cal. App. 409 [119 Pac. 953]; *County of El Dorado* v. *Meiss,* 100 Cal. 268 [34 Pac. 716]; *Ex parte Lemon,* 143 Cal. 558 [65 L. R. A. 946, 77 Pac. 455, 457]; *Ex parte Jackson,* 143 Cal. 564 [77 Pac. 457]; *Bramman* v. *City of Alameda,* 162 Cal. 648 [124 Pac. 243, 245]; *Ex parte Richardson,* 170 Cal. 68 [148 Pac. 213, 215]; *The Emporium* v. *City of San Mateo,* 177 Cal. 622 [171 Pac. 434]; *In re Gilstrap,* 171 Cal. 108 [Ann. Cas. 1917A, 1086, 152 Pac. 42].) It has been held that a classification providing a different charge for those engaged in the same general business, or a charge upon one and a failure to charge another, must be based upon a natural or reasonable distinction. (*Ex parte Richardson, supra.*) In the same case it was said: "But, and we are now speaking solely of revenue taxes, we know of no principle that warrants the imposition of a tax on some of those engaged in a certain business solely because of the method they use in making their sales and deliveries, and the exemption of all engaged in the very same business

who do not use that method. We are speaking, of course, of methods not involving any occupancy or use of public property, such, for instance, as the use by wagons of a public highway."

While the decision in each case must rest upon its facts and the application of well understood rules of law to these facts, it might assist in the determination of the present problem to review some of the many cases in which the facts and the law have been construed together.

It has been held that an ordinance imposing a license upon one who sells outside of a town or city, lesser in amount than that charged one who sells within such town or city is based upon a natural or reasonable classification because "the difference between the *quantum* of sales made and the prospective profit to be realized . . . is manifest to every one. This difference amply justifies the discrimination made by the ordinance." (*County of Amador* v. *Kennedy,* 70 Cal. 458 [11 Pac. 757, 758].) The classification whereby the charge placed upon those selling articles at a fixed place of business is placed lower than that upon those not having such a fixed place of business is not an improper discrimination. (*Ex parte Haskell, supra.*) An ordinance which provides a lower license upon restaurants where the meals are prepared by the proprietor or members of his family than upon restaurants where the meals are prepared by others has been held to rest upon a natural and reasonable classification and not discriminatory. (*Ex parte Lemon, supra.*) Further illustration of this principle may be found in the following cases: *Ex parte Stephen,* 114 Cal. 278 [46 Pac. 86]; *Kaiser Land & Fruit Co.* v. *Curry,* 155 Cal. 638 [103 Pac. 341]; *Riley* v. *Chambers,* 181 Cal. 589 [8 A. L. R. 418, 185 Pac. 855]; *Ex parte Stork,* 167 Cal. 294 [139 Pac. 684]; *In re Bruce,* 54 Cal. App. 280 [201 Pac. 789]; *Ex parte Heylman,* 92 Cal. 492 [28 Pac. 675]; *In re Higgins,* 50 Cal. App. 533 [195 Pac. 740]; *Los Angeles etc. Corp.* v. *Los Angeles,* 163 Cal. 621 [126 Pac. 594].

While in some cases it has been said that under the power to license for the purpose of revenue and regulation, a branch of the taxing power, the right to differentiate between different business rests upon the difference in the business and upon different methods of conducting a business (*Pacific*

*Rys. Adv. Co.* v. *Conrad,* 168 Cal. 91 [141 Pac. 916]), the distinction in the manner of conducting a business has been held an insufficient ground of classification and for a different license charge. (*Ex parte Richardson, supra.*) An analysis of the facts of the cases supporting the rule first stated discloses that the decisions can be supported by a difference in the business conducted rather than the method of conducting it. I am inclined to the conclusion that the better rule is the one where the distinction is found in the business rather than in the method of conducting it.

██ It has been repeatedly and firmly held in California that the governing body of a municipality is without any power to attempt to classify persons, either natural or artificial, engaged in precisely the same business, placing a license charge on some, while exempting others, or a charge not operating uniformly upon all engaged in precisely the same business. Cases most frequently arise under this rule where the municipality attempts to erect a license barrier around its boundaries by placing a greater charge upon those having business establishments in other localities than upon those having places of business within its boundaries. (*Lassen County* v. *Cone,* 72 Cal. 387 [14 Pac. 100]; *In re Hart,* 36 Cal. App. 627 [172 Pac. 610]; *In re Hines,* 33 Cal. App. 45 [164 Pac. 339, 340]; *Ex parte Frank,* 52 Cal. 606 [28 Am. Rep. 642]; *Ex parte Riley,* 39 Cal. App. 58 [177 Pac. 854]; *Ex parte Robinson,* 68 Cal. App. 744 [230 Pac. 175].)

In approaching a discussion of the facts of the instant case and applying the foregoing rules thereto I must bear in mind the well-established rule of construction announced in *Ex parte Lemon, supra,* as follows: "Speaking of a somewhat similar objection to an ordinance in *Ex parte Haskell,* 112 Cal. 412, 416 [32 L. R. A. 527, 44 Pac. 725], this court said: 'It is urged . . . that the particular provision in question is unreasonable and oppressive and that it is unequal and unlawfully discriminating. . . . A municipal ordinance must be very clearly obnoxious to such objections as those made, or some one of them, before it will be declared invalid by the courts. Every intendment is to be indulged in favor of *its* validity, and all doubts resolved in a way to uphold the law-making power; and a contrary conclusion will never be reached upon light consideration.

It is the province and right of the municipality to regulate its local affairs—within the law, of course,—and it is the duty of the courts to uphold such regulations, except it manifestly appear that the ordinance or by-law transcends the power of the municipality, and contravenes rights secured to the citizen by the constitution, or laws made in pursuance thereof.' This declaration finds ample support in the authorities." (See, also, *Grumbach* v. *Lelande,* 154 Cal. 679 [98 Pac. 1059]; *Ex parte Burke,* 160 Cal. 300 [116 Pac. 755]; *Ex parte Ellsworth,* 165 Cal. 677 [133 Pac. 272]; *In re Kidd,* 5 Cal. App. 159 [89 Pac. 987]; *In re Murphy,* 8 Cal. App. 440 [97 Pac. 199].)

Appellant confidently rests its case upon the following decisions: *In re Hines, supra, Ex parte Robinson, supra,* and *Town of St. Helena* v. *Butterworth,* 198 Cal. 230 [244 Pac. 357, 358].

The first two cases are easily distinguishable in fact from the instant case. In each of them the ordinance under attack clearly discriminated between the local business conducted within the city and the business conducted principally outside the city solely because of the different sites of the principal places of business and for no other reason. Such a discrimination has been held illegal without deviation in decision. In the Hines case it was said: "We are of the opinion that the provisions of the ordinances under which petitioner has been convicted attempt to create and enforce a discrimination not based upon differences in the nature of the business being transacted or differences in the manner of conducting the same business, or any other difference other than the mere fact of difference in destination of the goods collected and delivered by wagons collecting for laundries located outside of the city and the destination of goods collected for delivery to laundries within the city. The license provisions in question are plainly devised as a protective tariff for the benefit of laundries located in the city of Venice or laundry wagons doing business with laundries located in the city of Venice, and apparently they have no other purpose."

The facts of the case of *Town of St. Helena* v. *Butterworth, supra,* are quite similar to those under consideration here. The same question of transportation by truck over the city streets, and delivery to a point within the city by

common carrier that is raised in the instant case was before the Supreme Court in the Town of St. Helena case, where it was said: "But, for another reason we are of the opinion that the ordinance imposing an arbitrary license tax of fifteen dollars per quarter on the business of appellant is open to attack. It discriminates between the wholesale merchant whose place of business is outside the town of St. Helena and who ships his goods to the merchants in the town by any other method than by personal delivery in a wagon, truck, automobile or other vehicle, and the wholesale merchant whose place of business is outside St. Helena, and who uses those means of delivering his goods within the town. The wholesale merchant in the first class is exempted; the merchant in others is placed under the burden of the tax. We are unable to perceive any rational reason for such discrimination in favor of the one class as against the other. The decision in *Ex parte Haskell, supra,* has no application to the objection to the St. Helena ordinance we are now considering. The ordinance in that case, as was pointed out by the court (p. 420), was general in its terms, and applied alike to all residents and nonresidents who did not maintain regular places of business in the city of Chico, and who sold to persons not regularly engaged in carrying on such lines of business. The ordinance here, in the imposition of the license tax on appellant and exempting other wholesalers, discriminates between persons similarly situated and exercising the same privileges. It therefore falls within the inhibition of the constitutional provision. (Art. I, sec. 21; *Bramman* v. *City of Alameda, supra; In re Robinson,* 68 Cal. App. 744 [230 Pac. 175], and cases cited.)"

The case of *Bramman* v. *City of Alameda, supra,* does not support the rule for which appellant is contending. In fact it is strong authority for the rejection of this rule. The facts of the case as disclosed in the opinion show that Bramman was a retail dealer in meats with a shop in the city of Alameda from which he made deliveries to his customers by means of two one-horse carts, each drawn over the streets of the city. He paid a business license upon his shop but refused to pay an additional license upon his delivery carts as required by the ordinance. Bramman brought suit against the city of Alameda and its chief of

police seeking to enjoin them from enforcing those provisions of the ordinance requiring him to pay a license for the use of the carts, contending that they were invalid. In deciding this contention against Bramman and in upholding the ordinance, the Supreme Court said: "The principal point made by the respondent against the validity of section 85 of the ordinance is that it is an unwarranted attempt by the municipality to impose a license upon (taking his particular occupation) an incident to the business of a retail meat dealer,—namely, the use of delivery wagons therein, while there has already been imposed a license-tax upon the business itself to which such use is incident. It may be conceded that the municipality could not divide a single taxable privilege and impose a separate tax upon different elements which constitute it. But when the entire ordinance here in question is given proper consideration, it is evident that nothing of this kind is attempted. While, of course, the municipality in the imposing of taxes may not discriminate in doing so by imposing different license-taxes upon persons similarly situated and exercising the same privilege, still it is well settled that it may classify occupations, and in doing so may distinguish between different occupations, and likewise distinguish between those engaged in similar occupations. In adopting a classification with reference to the persons engaged in the same general occupation or business for the purpose of imposing a license-tax any standard or rule of gradation may be adopted which is fair and reasonable. The license-tax to be paid by those engaged in a certain business or occupation may be made to depend on the business done—the receipts, sales or business transacted. (*County of San Luis Obispo* v. *Greenberg,* 120 Cal. 300 [52 Pac. 797].) . . . Within the rule of the authorities, as the classification may be accomplished in a variety of ways, any gradation will be sustained which is reasonable and fair and equally affects all within the class to which it is applied. And among the varying standards which may be adopted, certainly it cannot be objected to as unfair or unreasonable that as to a business class a reasonable distinction between members of the class cannot be based upon the number of vehicles and animals which are used in the prosecution of the business. This, as in the case of distinguishing a class by the number of persons engaged in the

conduct of the business, is a method of gauging the amount of business done or the capital employed therein and imposing a license-tax upon the occupation under such gradation. Such a classification is recognized as a proper one in Dillon on Municipal Corporations, section 1410, volume 4, fifth edition, page 2473. See, also, *Wilson* v. *City of Lexington,* 105 Ky. 765 [49 S. W. 806, 50 S. W. 834]. This it appears to us is just what the ordinance here in question does. We are not dealing with two distinct ordinances, nor with one ordinance imposing a tax upon the privilege of doing business in a municipality and likewise taxing vehicles, but with a single ordinance taxing occupations or business privileges and attempting to classify and license all such businesses for both regulation and revenue. Section 85 of the ordinance cannot be taken as something separate and distinct from the other provisions of the ordinance, but its provisions must be construed together and the ordinance looked to in its entirety. When this is done no difficulty is presented in determining exactly what is provided thereby. As far as the retail butcher business is concerned, conducted as a distinct business upon which a tax may be imposed, the ordinance divides it into classes consisting of those who maintain a place of business in the conduct of which no vehicles are used, and those who in the conduct of the same business use vehicles. Classification being authorized, such a classification is fair, rational, and reasonable. The municipality is required to maintain and repair its streets. Those engaged in a business and using vehicles to transact it are doing so to the constant detriment of the street and are also in the employment of a use thereof which is a use not commonly exercised by all the inhabitants of the municipality. It is therefore only proper and fair that those who make use of the streets in the conduct of a business privilege should pay therefor; and that those who use the streets most should pay more than those who use them less. This is the rule obviously adopted in the ordinance in question and upon which the classification is based. All engaged in the business of retailing meats, but who use no vehicles in transacting that business, constitute one class and for the privilege of doing business as such in the municipality are required to pay an annual license-tax of ten dollars. Another class are those engaged in such business

but using vehicles in connection therewith. The license fee to be paid by this class is made dependent upon the number of animals used in the vehicles employed in the business. This is to be ascertained by the simple standard of multiplying the number of vehicles used in the business and drawn by one animal by three and those drawn by more than one animal by five, and as may be the case with each retail meat dealer using vehicles, this product added to the amount of the tax of ten dollars will constitute the amount which under the ordinance these latter dealers are, as a class, required to pay as an occupation tax. This is all there is to the ordinance. Section 85, as counsel for respondent assumes, is not at all a tax on vehicles as- an essential incident of a business on which a license-tax has by previous provisions of the ordinance been fixed. The section is a constituent part of the general ordinance fixing occupation taxes, and is to be read and construed as such, and amounts simply to a classification of retail meat dealers into those who do, and those who do not, use vehicles in following their business (a classification quite rational and fair as we have pointed out) and measuring the occupation tax to be paid by the classification. The municipality un- doubtedly has a right to make reasonable classifications, and as this is clearly what has been done here, and the license-tax imposed as an occupation tax on the business under the classification, it was a valid exercise of municipal power and should have been so held.''

I cannot distinguish the instant case in principle from the case of *The Emporium* v. *City of San Mateo,* 177 Cal. 622 [171 Pac. 434, 435]. The Emporium was a corporation which operated a department store in the ' city of San Francisco for the sale of merchandise at retail to customers within San Francisco and also within other neighboring cities. Further facts are set forth in the opinion as follows: ''For the purpose of delivery of articles of merchandise purchased from it by residents of or in the vicinity of the city of San Mateo the plaintiff maintains within said city of San Mateo a system of local delivery, consisting of horses and wagons in charge of its employees, whose daily duty it is to receive such articles of merchandise at the stations in said city to which they have been shipped by rail, there to load same upon such delivery wagons and

deliver the several articles of merchandise to their respective purchasers within and about said city; that the city of San Mateo has an ordinance entitled 'General License Ordinance', which provides, in subdivision 13 of section 11 thereof, for the levying and collection of a license tax upon every person, firm or corporation driving, operating or maintaining upon any street in said city a delivery wagon or wagons, at a specified rate for each wagon according to its tonnage capacity. The defendants are averred to have persistently attempted to collect the amount of license required by this ordinance from the plaintiff, and this action was instituted to enjoin them from so doing. The plaintiff contends that the ordinance is invalid for several reasons, and also that even though generally valid it is inoperative in its application to the plaintiff.''

The Supreme Court decided against the contention of The Emporium and held it subject to the license charge for the following reasons: ''When a business institution, though located as to its central place of conduction or of the sale of its goods or products in one city or town, conducts through delivery wagons or other vehicles a regular system of delivery to customers within another municipality, the latter under proper authority may impose a license tax upon the wagons or other appliances of the distributing business which is thus actually done within it and upon and along its streets. (*Memphis* v. *Battaile,* 55 Tenn. (8 Heisk.) 524 [24 Am. Rep. 285] ; *City of Carterville* v. *Blystone,* 160 Mo. App. 191 [141 S. W. 701] ; *Wonner* v. *Carterville,* 142 Mo. App. 120 [25 S. W. 861].) These authorities from other jurisdictions seem to us to correctly state the rule in this regard, and they are not out of harmony with the recent case of *Bramman* v. *City of Alameda,* 162 Cal. 648 [124 Pac. 243], which upon a somewhat different state of facts lays down a broad rule respecting the powers of municipalities in this state to levy taxes for revenue and regulation upon business privileges conducted within them, to the extent of holding that under a proper classification the city of Alameda had power to pass an ordinance imposing a license tax upon persons doing a certain business within it, and also upon the delivery wagons of those engaged in such business who maintained, in addition thereto and in aid thereof, a system of delivery wagons within the municipality. The

present action presents an even stronger case for the application of the latter and, we think, the better rule. The plaintiff in the instant case, as its complaint affirmatively shows, has not been satisfied to make deliveries of its goods sold to patrons in San Mateo through the occasional and purely incidental means of delivery wagons operated as an immediate adjunct to its drygoods store in San Francisco, and using the streets of San Mateo therefor in a transient way; but on the contrary the plaintiff has established and regularly maintains in the said city of San Mateo a local delivery system, with horses, wagons and employees regularly engaged in the occupation of going daily to the railroad stations of said city, and there receiving and loading upon their wagons the goods and merchandise of the plaintiff sent to said places of distribution by rail and thence carried by regular deliveries upon and along the streets of said city to the places of business or residence of the persons purchasing the same. In other words, the complaint herein places the case in precisely the same position it would have been had the plaintiff, instead of organizing and equipping its own local delivery system in San Mateo, made a contract with a local delivery establishment for the sole carriage and delivery by it of the goods of the plaintiff shipped to said point by rail, which local institutions would seek to avoid the burdens of the ordinance in question upon the ground that it and its activities were merely incidental to the business of the plaintiff conducted in San Francisco. This statement of the situation illustrates the distinction in principle between the different lines of cases cited by the respective parties to this controversy. The business which the defendants are seeking to bring within the scope of the ordinance is not that which the plaintiff is conducting at its San Francisco store, but is that which it is maintaining in its regular local delivery system within and upon the streets of San Mateo. Under the foregoing circumstances as outlined by its own pleading we are entirely satisfied that the plaintiff has brought itself within the taxing powers of the city of San Mateo, and that the ordinance in question is not only valid as within the scope of the powers of the municipality to enact the same, but is also valid in its application to the plaintiff upon the state of facts disclosed in the complaint.''

The recent case of *California F. S. Co.* v. *Santa Monica,* 206 Cal. 714 [275 Pac. 948], furnishes sufficient authority for upholding the ruling of the trial court in the instant case. The Supreme Court said: ''The City of Santa Monica is a municipal corporation situate in the county of Los Angeles and organized as such under a freeholders' charter. At all times named herein there has been in full force and effect in said city an ordinance entitled 'An ordinance providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations.' By the provisions of said ordinance each person, firm or corporation conducting, managing or carrying on the business of running, driving or operating any automobile, automobile truck, automobile tank wagon, or any other motor-propelled vehicle used for the transportation of baggage, express, freight, household goods, merchandise or machinery, was required to pay semi-annually a license tax computed upon the annual tonnage of freight, wares and merchandise transported by the persons, firms or corporations as above enumerated. . . . Appellant claims that said ordinance is void and that it was beyond the power of said city or its commissioners to enact it, in that said ordinance is an attempt to impose a tax or license on persons, firms and corporations doing business outside of the City of Santa Monica; that it is extraterritorial in its operation, application and effect and an attempt to take the private property of appellant for a public use without compensation; that said ordinance is invalid for the further reasons that it was enacted for taxation and revenue purposes in the guise of a police regulation; that it is oppressive, unreasonable and arbitrarily discriminatory in its operation. . . . It is alleged that by its threatened acts said city and its officers have caused great and irreparable damage to plaintiff by delaying plaintiff and its agents and employees in the delivery of freight, household goods, wares and merchandise to its customers and patrons in said City of Santa Monica and to other customers and patrons of plaintiff without said city, and the arrest and threatened arrest of plaintiffs' employees aforesaid will continue to cause the plaintiff to suffer great and irreparable injury and loss in the continuance of its business, etc. . . . Appellant rests its claim of illegality of said ordinance upon the grounds that it attempts to impose a tax upon persons,

firms and corporations doing business outside of said City of Santa Monica; that its effect is extraterritorial and an attempt to take private property without compensation for a public use; that it was enacted for taxation and revenue purposes in the guise of a police regulation; that it is oppressive, unreasonable and arbitrarily discriminatory. We are of the view that said ordinance is not invalid on any of said grounds. . . . In the instant case appellant not only alleges that it conducts business in Santa Monica with which the enforcement of the city ordinance will interfere, but alleges sufficient to show that its purpose is to make its future business in said city much more extensive if it can tie the hands of the city officers against the enforcement of the city's ordinance. From the very nature of the business in which appellant is engaged, if it is to enter said city *ad libitum* upon 'Call', as stated in the pleading, it will transact business therein precisely as it transacts its business in the city of Los Angeles. It does not matter at which end of the line the business is initiated, its situs is the municipality of Santa Monica. The heavy autotrucks, moving machinery and other appliances necessary to conduct said business are brought into said city, and its streets are made to sustain the burden of said business equally with the streets of the city of Los Angeles. That appellant's use of the streets of said city will not be occasional or merely incidental to a business conducted elsewhere, as in the case of *In re Smith*, 33 Cal. App. 161 [164 Pac. 618], and other cited cases, is apparent from the pleading, which discloses the purpose of appellant to use the streets of said City of Santa Monica for business purposes as frequently and as extensively as its business expectations may justify.''

In the instant case it is admitted, and correctly so, that the only business of appellant conducted within the respondent city upon which the license charge is sought to be imposed is the delivery of merchandise by motor-truck over the city streets; that no attempt has been made to collect a license on any other part of appellant's business; that it intends to continue this business without paying any license tax therefor; that this business is not occasional or merely incidental to a business conducted elsewhere. If appellant can escape payment of this license charge it is evident that any trucking, transfer or express business

operated by means of motor-propelled vehicles wholly within the limits of the city and carrying freight or merchandise from place to place therein and not having a business office will also escape the license charge. To exempt one line of a particular and identical business would require the exemption of all others engaged in such business. The language used by Mr. Justice Seawell in *California F. S. Co. v. Santa Monica, supra,* which was concurred in by all the other justices of the Supreme Court is particularly pertinent: "If appellant's claim is sound, its employees, trucks, machinery and all appliances necessary to perform the service of moving household effects and freight may be brought into the city, and upon its streets, which serve as a suitable and ample place for the transaction of its business, and will be used without cost *ad libitum,* while the local one-vehicle expressman, whose place of business consists of a parking space in front of a dry-goods or grocery store, is required to pay a license tax. This would appear to be unfair discrimination against the local expressman."

The business conducted by appellant of using the streets of the respondent city for the operation of its trucks in the delivery of its merchandise cannot be confounded with the business of a similar wholesaler in Los Angeles shipping its products into the respondent city by common carrier. The latter is not engaged in the business of using the city streets for any purpose. The two are not even similar, for where the common carrier is employed to make deliveries, the merchant conducts no business of using the city streets for motor vehicle delivery of merchandise or for any other purpose. Therefore, there can be no discrimination against appellant in requiring it to pay a license charge upon its business conducted within the respondent city because another who does not even attempt to conduct a similar business therein is not required to pay a license upon his non-existent business.

A seeming sharp conflict in authority presented by the single case of *Town of St. Helena v. Butterworth, supra,* on the one hand, and *Bramman v. City of Alameda, supra, The Emporium v. City of San Mateo, supra, California F. S. Co. v. Santa Monica, supra,* and the long line of supporting cases hereinbefore cited, on the other, must be resolved against the contentions of appellant. The case of

*California F. S. Co.* v. *Santa Monica, supra,* is the latest pronouncement of the Supreme Court on the question here presented. It is supported by reason and a long line of authority. It must be held to be controlling here.

From the conclusions reached, it is unnecessary to consider the other questions raised by respondents in support of the judgment.

The appeal from the orders is dismissed.

The judgment is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 7, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1932.